2006 VT 117

**Ran-Mar, Inc., R & G Properties II, Inc. and R & G Properties III, Inc. v. Town of Berlin and Joadi Tracey, Treasurer and Collector of Current and Delinquent Taxes of the Town of Berlin**

[912 A.2d 984]

No. 05-311

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 17, 2006

___

*Kathleen B. O'Neill* and *Philip H. White* of *Wilson & White, P.C.*, Montpelier, for Plaintiffs-Appellants.

*Marikate E. Kelley* and *Philip C. Woodward* of *Woodward & Kelley, PLLC*, South Burlington, for Defendants-Appellees.

¶ 1. **Burgess, J.** This case arises out of a group of tax sales by the Town of Berlin to satisfy delinquent tax payments for properties owned by three related corporate entities: Ran-Mar, Inc.; R & G Properties II, Inc.; and R & G Properties III, Inc. (collectively, "taxpayers"). Taxpayers challenged the Town's actions, claiming that the Town exceeded its statutory taxing authority under 32 V.S.A. § 5254(a) by collecting "interest" and "penalties" through the tax sales and by retaining the excess proceeds from the tax sales during the redemption period. Taxpayers also claimed that the Town's retention of the proceeds was an unconstitutional taking. The superior court granted the Town's motion for summary judgment. We affirm.

¶ 2. Taxpayers owned a number of properties in the Town of Berlin. After the taxes on several of taxpayers' properties became delinquent, the Town gave notice of tax sales on seven of the properties. The notices stated that in order to prevent the tax sale taxpayers would have to pay the Town the principal on the delinquent taxes, any accrued interest, penalties, legal fees, and costs, before the date of the tax sale. Taxpayers did not pay the amount due to the Town,

and the tax sales were conducted. Following the tax sales, taxpayers requested that the Town provide an accounting of the sales and turn over to taxpayers the amount collected in excess of the taxes, costs, and fees owed by taxpayers. The Town responded that it intended to hold the proceeds of the tax sales until the expiration of the one-year statutory redemption period. Taxpayers brought suit in Washington Superior Court to set aside the tax sales and challenge the Town's retention of the tax sale proceeds during the period of redemption.[1] Taxpayers moved for judgment on the pleadings. The Town moved for dismissal or, alternatively, for summary judgment. The court granted the Town's motion for summary judgment, upholding the tax sales and the Town's authority to hold the proceeds until the end of the redemption period. This appeal followed.

¶ 3. Taxpayers argue that the tax sales were invalid because the Town's notices demanded that taxpayers pay accrued interest and penalties to prevent the tax sales. Taxpayers contend that the Town is not authorized to collect interest or penalties through tax sales under 32 V.S.A. § 5254(a), which provides: "When the tax with costs and fees is not paid before the day of sale, the real property on which the taxes are due shall be sold to pay such taxes, costs and fees." Taxpayers claim that the language "taxes, costs and fees" does not include "interest" or "penalties" as demanded by the Town. Taxpayers also argue that the Town had no right, statutory or otherwise, to hold the excess proceeds of the tax sale during the period of redemption and that to do so was an unconstitutional taking of their property.

¶ 4. First, we address taxpayers' contention that the Town exceeded 32 V.S.A. § 5254(a) by collecting interest on the delinquent tax principal by way of tax sale. Taxpayers argue that the Town cannot collect interest on delinquent taxes because interest is not specifically listed in § 5254(a). The superior court held that interest is considered to be an element of the tax obligation itself, and therefore did not need to be specifically listed in the statute to be collectible through tax sale.

¶ 5. In construing a taxing statute, like all statutes, our primary goal is to implement the intent and purpose of the Legislature. *In re Loyal Order of Moose, Inc., Lodge #1090*, 2005 VT 31, ¶ 8, 178 Vt.

---

[1] Taxpayers state on appeal that they have since redeemed all properties sold at the tax sales by paying the Town the amount owed plus interest at 12% per annum on the tax sale price as provided for under 32 V.S.A. § 5260.

510, 872 A.2d 345 (mem.). If a statute's meaning is plain on its face, we enforce it according to its terms. *Id.* "When the meaning of a statute is in doubt, we determine its intent from a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law." *Boutin v. Conway*, 153 Vt. 558, 562, 572 A.2d 905, 907 (1990) (internal quotations omitted). We construe all parts of the statutory scheme together, where possible, as a harmonious whole, *In re Estate of Cote*, 2004 VT 17, ¶ 10, 176 Vt. 293, 848 A.2d 264, and "[w]e will avoid a construction that would render the legislation ineffective or irrational." *In re Southview Assocs.*, 153 Vt. 171, 175, 569 A.2d 501, 503 (1989). Any remaining ambiguities are resolved against the taxing power and in favor of the taxpayer. *Loyal Order of Moose*, 2005 VT 31, ¶ 8.

■ ¶ 6. The Legislature authorized municipalities to collect interest on overdue taxes through 32 V.S.A. § 5136. Viewing the statutory scheme as a whole, we conclude that the Legislature intended interest authorized under § 5136 to be included as an element of the obligation collectible by tax sale under § 5254(a), or by other statutory means of property tax collection. Section 5136 does not specify a method by which the interest shall be collected, and no express mention of tax interest is made in most of the sections governing property tax collection. See 32 V.S.A. §§ 5221-5227 (collection of taxes by action at law); *id.* §§ 5251-5263 (collection of taxes by sale of real estate); *id.* § 5140 (collection of taxes from the estate of the deceased). Without some method to collect the interest, § 5136 would be rendered ineffective. The only statutory method of collection that expressly uses the word "interest" is found in 32 V.S.A. § 5141, which authorizes collection of delinquent taxes from the earnings of municipal employees. It would be an irrational result and contrary, we believe, to the intent of the Legislature if towns could collect the interest to which they are entitled under § 5136 only if the tax was owed by municipal employees or voluntarily paid by the taxpayer. Cf. *Boutin v. Conway*, 153 Vt. at 562, 572 A.2d at 907 (holding that a late payment penalty was part of the tax due itself, and that refusal to issue a driver's license based on failure to pay the penalty was valid, in part because "a contrary interpretation would lead to the irrational result that the commissioner would be unable to collect the penalty"). Thus, we conclude that in order to give effect to the interest-collec-

tion provision of § 5136, the Legislature intended interest authorized under § 5136 to be included as an element of the obligation collectible by tax sale under § 5254(a), or by other statutory means of property tax collection.

¶ 7. Taxpayers cite *Clace v. Fair* for the proposition that "[i]nterest and penalties are only incidental" to a delinquent tax and are not inherent to collection of the tax itself. 129 Vt. 573, 574, 285 A.2d 705, 706 (1971). In *Clace*, this Court held that tax collectors were not authorized to bring suit for penalties and interest when the principal tax obligation, although delinquent, had already been paid to, and accepted by, the town. *Id.* at 574, 285 A.2d at 705-06. We find *Clace* inapplicable for several reasons. First, the assessment of interest in the present case was not brought by an individual collector as a subsequent action after satisfaction of the underlying taxes owed, as was the case in *Clace*. The collection authority of towns is not constrained in the same manner as that of an individual tax collector. See *id.* at 574, 285 A.2d at 705 (construing 32 V.S.A. §§ 5221, 5222). Second, a post-*Clace* statutory amendment raises doubt about *Clace*'s continued validity and further supports our conclusion that the Legislature intended to allow collection of interest by tax sale or other collection means. Under current law, "[t]he acceptance of full or partial payment of overdue taxes . . . shall not preclude the town from collecting any unpaid balance of taxes and any interest and collection fees accruing to the town, whether relating to the collected or uncollected portion of taxes." 32 V.S.A. § 5142(a) (originally enacted by 1985, No. 91). Thus, satisfaction of the tax obligation in this case by means of a tax sale and subsequent redemption does not preclude collection of interest and fees as in *Clace*.

¶ 8. We next address taxpayers' argument that the Town's demand of "penalties" is not authorized by § 5254(a). The superior court determined that the "penalties" listed in the notice from the Town was not actually a penalty, but the eight percent collector's fee authorized by 32 V.S.A. §§ 1674, 5258. "Fees" are explicitly collectible by tax sale under § 5254(a). The Town's use of the term "penalties" to refer to the collector's fee does not invalidate the tax sale, nor does it prevent the Town from collecting the fee.[2] The purpose of the notice is to inform the taxpayer that the property is to be sold, so that

---

[2] The better practice, however, is for towns to refer to the collector's fee as a fee in their notices to taxpayers.

the taxpayer can prevent the sale by paying the delinquent taxes. *Chester Motors, Inc. v. Koledo*, 146 Vt. 357, 358, 503 A.2d 551, 552 (1985). The notice was clear enough to inform taxpayers of the sale, and of the amount properly due.

¶ 9. Finally, we address taxpayers' argument that the Town's retention of the excess proceeds from the tax sale was unauthorized by statute and amounted to an unconstitutional taking.[3] While noting that Vermont's taxing statutes make no provision for the disposition of the surplus proceeds during redemption, the superior court concluded that taxpayers had no right to the proceeds during the redemption period and that no taking had occurred. We agree.

¶ 10. Taxpayers who wish to redeem their property have one year from the time of the tax sale to pay the town the amount owed plus additional interest of one percent per month on the price paid by the buyer. 32 V.S.A. § 5260. During this one-year redemption period the taxpayer maintains possession and use of the property and the purchaser does not take title. *Id.* During this time there has been no transfer of the property; the transaction is not yet completed.

¶ 11. The redemption statutes are silent concerning disposition of the tax sale proceeds pending redemption. No taxpayer right to such proceeds during that time is created by statute. There is no convey-ance of the land to anyone during redemption, so no proceeds appear due to the taxpayer absent transfer of title. Until title is conveyed, the delinquent taxpayer is not entitled to any proceeds because no property has been forfeited until that time.[4]

¶ 12. For these reasons, taxpayers' argument that the retention of the proceeds was an unconstitutional taking also fails. There is no taking, actual or implicit, because the Town neither took property away from taxpayers, nor deprived taxpayers of the economic use of their property. Taxpayers had full use, possession and title of the property throughout the redemption period. Taxpayers' argument

---

[3] The term "excess proceeds" from a tax sale refers to the amount that the buyer at the sale paid less the amount owed to the town by the taxpayer.

[4] Justice Dooley opines in his concurrence that, under certain circumstances, it may be wiser for towns to turn over the anticipated surplus to the taxpayer in advance of finalizing the conveyance. This may be correct, but absent any affirmative obligation to do so, it is properly left for the town to determine the risks and benefits of paying the taxpayer before title is conveyed.

that the Town refused to "return" or "give back" the excess proceeds demonstrates the inherent flaw in its takings argument. The proceeds from the sale, incomplete until the passage of the redemption period, came from the buyer, not taxpayers, so that nothing was taken or received from taxpayers for the Town to return. At the end of the redemption period, if taxpayers had failed to redeem the property and title had been conveyed, the excess proceeds would have been turned over to them; otherwise, the proceeds would have been returned to the buyer.

¶ 13. Taxpayers cite *Bogie v. Town of Barnet*, 129 Vt. 46, 270 A.2d 898 (1970), in support of their argument that the combination of the Town's retention of the proceeds while charging interest at a rate of one percent per month in order to redeem, is an unconstitutional taking. In *Bogie* we held that a taking occurred when the Town of Barnet conducted a tax sale in which the town bought the property for $848.67 and, after the redemption period passed, sold the property for $5,314. *Id.* at 46-47, 49, 270 A.2d at 899, 900-01. The Town's actions here are not analogous to the Town of Barnet's actions in *Bogie*. In *Bogie*, the town received a windfall by acquiring the property at the tax sale and subsequently selling it and retaining the excess proceeds for itself after the redemption period. *Id.* at 48-49, 270 A.2d at 900. Here, the Town received no such windfall; the additional interest that accrued during redemption is not retained by the Town, but is paid over to the buyer as required by 32 V.S.A. § 5260. Taxpayers characterize the Town's actions as denying them the money they are due and charging interest on that money at the same time. This argument again mischaracterizes the facts and the statutory redemption scheme. Taxpayers are due nothing for nothing. The one percent per month interest applies only if taxpayers redeem the property, and that interest is then paid over to the tax sale buyer who has invested money for a chance to purchase the property. It is the expectant buyer, not the Town, who receives the one percent per month interest on the full amount the buyer was required to commit for up to a year for the mere possibility of acquiring the property. Unlike the situation in *Bogie*, where the property was unredeemed and ultimately sold, here there was no conveyance to a buyer, no loss to the taxpayer, and no windfall to the town. *Bogie* is entirely inapposite to this case.

*Affirmed.*

¶ 14. **Dooley, J.,** concurring. I concur in the majority opinion, and write only to add that the Town can, and often should, return the excess proceeds to the taxpayer when it receives them. It is undisputed that the Town will receive no more money for the delinquent taxes, and their collection costs, whether it retains the excess proceeds until the redemption period ends or it distributes them when it receives them. Further, it is undisputed that under our decision in *Bogie v. Town of Barnet*, 129 Vt. 46, 270 A.2d 898 (1970), the economic benefit of the excess proceeds must go to the taxpayer, whether or not the taxpayer redeems. Finally, it is undisputed that if the taxpayer wants to redeem, it will have to pay the purchaser the purchase price plus statutory interest to make the purchaser whole. This must occur whether or not the excess proceeds are distributed, although, if they are not, the taxpayer can use them as part of the amount paid to the purchaser.

¶ 15. Under these circumstances, at least in the simple case as this one was, the Town has no clear reason to retain the excess proceeds, and there are reasons not to. It is likely that a taxpayer who is defaulting on payment of taxes has other unpaid creditors who will draw the Town into litigation to reach the excess proceeds. Returning the excess proceeds may be sufficient to keep the taxpayer's business alive with commensurate economic activity and jobs in the town.

¶ 16. In its brief, the Town responds that returning the excess proceeds may be acceptable in simple cases, but that it isn't in the Town's interest when there are mortgage or attaching creditor interests in the real estate, and these persons have the power to redeem, or when there is a risk of challenge to the tax sale. I agree that the Town should not return the proceeds without the consent of the mortgagee,[5] but in many cases the mortgagee is likely to give consent because the excess proceeds can be used to pay the mortgage debt. I don't understand how distributing the proceeds hurts the Town's position if the tax sale is declared invalid. The taxpayer

---

[5] The statute gives the right to redeem only to the owner and the mortgagee. 32 V.S.A. § 5260. The Town notes, however, that notice of the sale must also be given to each "lien holder of record," 32 V.S.A. § 5252(4), and that this must mean that the lien holders have a sufficient interest to also give them the right to redeem. Since I am talking here about what a town might do, rather than what it must do, I offer no opinion on whether the Town's position is correct. At most, this position expands the list of those from whom the Town could seek consent.

cannot regain clear title without restoring the purchase price to the buyer after the invalid sale.

¶ 17. I understand the view put forward by the Town, and apparently accepted by the majority, that it is unfair for the taxpayer to retain the equity of redemption, possession of the land, and the proceeds of the sale at the same time. While that view of fairness protects the legality of the Town's action in holding the excess proceeds, it does not make that action wise.