*Mangini v. State of Vermont*, 39-1-16 Wncv (Teachout, J., Apr. 7, 2017)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 39-1-16 Wncv** |

**LISA MANGINI**
    **Taxpayer–Appellant**

    **v.**

**VERMONT DEPARTMENT OF TAXES,**
    **Appellee**

### DECISION ON APPEAL

Taxpayer Lisa Mangini appeals from a Determination of the Commissioner of Taxes affirming the Department's assessments against her, which represent homestead property tax income sensitivity adjustments previously credited to her for tax years 2012 and 2013, plus interest and penalties. The Department's position and the Commissioner's conclusion has been that Ms. Mangini did not qualify for the adjustments because she did not own her homestead in the relevant years. The narrative is complicated but the facts are undisputed. Their legal effect on the issue of homestead ownership is the sole issue in this case.

*The facts*

During Ms. Mangini's marriage, her husband bought a vacation home in Vermont. They were both out of state residents at the time. The title to the home was in his name only, as was the corresponding note and mortgage. In 2007, with the marriage deteriorating, Ms. Mangini moved into the Vermont house while her husband remained out of state. She has lived there and been domiciled in Vermont ever since. She filed for divorce in Vermont in 2008.

With divorce proceedings underway, her husband stopped making payments on the loan for the Vermont house and the bank filed a foreclosure case naming her husband only as Defendant. The Vermont house was part of the marital property subject to equitable division in the divorce. Ms. Mangini intervened in the foreclosure case.

The divorce court (Family Division in which the divorce case was filed) then awarded the Vermont house to Ms. Mangini in the final decree of divorce, subject to the mortgage debt:

> Plaintiff is awarded the parties' real property in Weathersfield, Vermont, consisting of a vacation home and an adjacent undeveloped parcel of land, free and clear of any interest of defendant [Husband] and subject to all debt associated with the properties. Plaintiff [Wife] shall assume and be solely liable for all debts now associated with each of the properties and shall indemnify and hold harmless the defendant therefrom. Within six (6) months from the date of this Order, plaintiff shall remove defendant from all obligations associated with the

properties, including but not limited to all mortgage loan and note obligations, by refinancing said properties or otherwise.  The Court will, for good cause shown, extend the six (6) months afforded to plaintiff to refinance the properties if the pending foreclosure action precludes the timely refinancing of and discharge of the defendant from the mortgage debt associated with the property.  Defendant shall immediately quitclaim his interest in said properties to plaintiff, and each party shall execute all documents and take all steps necessary to accomplish the transfer to plaintiff of title to both properties and to secure the release and discharge of the defendant as an obligor on the mortgage loans, notes and debt on each property.

*Mangini v. Hardie*, Final Order, No. 67-2-08 WrDmd (Vt. Super. Ct. July 1, 2011).  The divorce court's award of the Vermont house to Ms. Mangini has never been modified.

The foreclosure court (Civil Division in which the foreclosure case was filed) then ruled that Ms. Mangini held title to the Vermont house "free and clear" of the mortgage obligation based on legal conclusions not relevant here. The issue was not whether she owned it but whether or not it was subject to the mortgage.

Despite the provisions of the final divorce decree requiring it, Ms. Mangini's ex-husband never quitclaimed the Vermont property to her, and she never took steps to remove his name from the mortgage and note.

Pursuant to 15 V.S.A. § 754, Ms. Mangini took the divorce decree, or the relevant excerpt from it, to her town clerk to be recorded.  Section 754 provides:

> A certified copy of the judgment, or relevant parts thereof, when recorded in the land records of the town in which real estate of the parties is located, shall be effective to convey or encumber the real estate in accordance with the terms of the judgment, as if the judgment were a deed.  A property transfer return shall be filed with the judgment, but the transfer shall be exempt from [the property transfer tax].

She did not file a property transfer return with the judgment.  The town clerk accepted the judgment for recording but for some unknown reason did not record it.  Inexplicably, the town clerk did not advise Ms. Mangini that she needed to file a property transfer tax return or that the judgment was not recorded.  Ms. Mangini in fact did not know that the judgment had not been recorded.  Because the judgment was not recorded, Ms. Mangini's ownership was not reflected in the grand list.

She promptly declared the Vermont house her homestead and sought and received the homestead property tax income sensitivity adjustments for tax years 2012 and 2013 that now are in dispute.

The bank appealed the foreclosure court's ruling.  Ms. Mangini appealed from the final order of divorce "arguing that the court abused its discretion by inequitably dividing the marital

2

property and by not awarding her maintenance." *Mangini v. Hardie*, No. 2012–362, 2014 WL 3709678 (Vt. April 2014) (unpub.) (*Mangini 2*).

For reasons that require no elaboration here, in March 2014, the Vermont Supreme Court reversed the foreclosure court's ruling. See generally *Brattleboro Savings and Loan Ass'n v. Hardie*, 2014 VT 26, 196 Vt. 144 (*Mangini 1*). The consequence was that while Ms. Mangini owned the property as provided for in the divorce decree, it was subject to the debt reflected by the mortgage and note.

The next month, in April 2014, the Vermont Supreme Court remanded the divorce case "for the family court to reconsider the property division and maintenance not only because of its failure to explain a highly unequal distribution of marital property but also to take account of this Court's recent decision concluding that wife cannot avoid the 2008 mortgage." *Mangini 2*, 2014 WL 3709678, *2 (noting at *3 that the divorce court "appears to have awarded wife the marital home under the assumption—or at least presumed likelihood—that she ultimately would obtain the property free and clear of the 2008 mortgage").

On remand following *Mangini 2*, in a May 2015 judgment, Ms. Mangini again was awarded the Vermont property and, among other things, the court "ordered that husband be responsible for any deficiency in the event of a foreclosure sale of the Weathersfield property." *Mangini v. Hardie*, No. 2015–255, 2016 WL 182392, *2 (Vt. Jan. 2016) (*Mangini 3*) (the Supreme Court's ruling on appeal of the family court's decision following the remand).[1] Ms. Mangini's ex-husband appealed on numerous grounds but the Court affirmed on each. See generally *id*.

Throughout all this time, Ms. Mangini lived in the Vermont house. The bank paid the property taxes. No one made payments on the loan. The foreclosure court entered a final decree of foreclosure in November 2014. There was no redemption and the property went to auction in July 2015, following *Mangini 3*, the Supreme Court's second decision, finally resolving the divorce case. Ms. Mangini was the highest bidder, as reflected in the order of confirmation of sale. *Brattleboro Savings & Loan Assoc. v. Hardie*, No. 88-2-11 Wrcv (Vt. Super. Ct. July 24, 2015) (*Mangini 4*).

At some point after receiving the 2012 and 2013 income sensitivity adjustments, the Town notified the Department that it could not verify Ms. Mangini's ownership of her Vermont property because her ownership was not reflected in the grand list. After some back and forth, the Department, in November 2013, made its determination that Ms. Mangini did not own her Vermont house, which meant that she did not qualify for the adjustments, and assessed her for the adjustments it believed she had incorrectly received. She appealed to the Commissioner, who affirmed the Department's position after an evidentiary hearing.

---

[1] To be clear, as used in this decision, *Mangini 1* is the Supreme Court's ruling in the foreclosure case. *Mangini 2* is the Supreme Court's decision resolving the first divorce appeal. *Mangini 3* is the Supreme Court's decision resolving the second divorce appeal, after the divorce court ruled on remand after *Mangini 2*. *Mangini 4* is the foreclosure court's order of confirmation of sale following *Mangini 1*.

*The Department's rationales for denying the adjustments*

The Commissioner's position is that Ms. Mangini never came to own her house until the 2015 confirmation order following the auction, or until 2016 when the last appeal in her divorce case was resolved. The Commissioner's Determination reflects several rationales for that notion. They include the following. (1) She failed to file the property transfer tax return with the town clerk in 2012 so the judgment was not recorded and she did not obtain ownership pursuant to 15 V.S.A. § 754. (2) Ownership for adjustment purposes means ownership as reflected on the town's grand list, and her town's grand list did not reflect her ownership. (3) The 2015 confirmation order granted title to the property to her, demonstrating that she did not have title previously. (4) To the extent that she had equitable title prior to the confirmation, 32 V.S.A. §§ 5401(7)(D) and 6062(e) disqualified her for any adjustment.

On appeal, the Department includes additional rationales not apparent in the Commissioner's Determination. (5) Even if Ms. Mangini otherwise might have had title following the original divorce judgment, she did not have it because the judgment required her to refinance or otherwise remove her ex-husband's name from the related debt and she did not. (6) The divorce judgments were stayed by operation of V.R.F.P. 12(d)(1) and thus could not have awarded title to her until the last appeal was resolved in 2016. (7) Ms. Mangini knew she did not own the property and did not act in good faith in seeking the adjustments. The Department argues that Ms. Mangini knew that the bank was paying the property taxes and she was not and did not so inform the Department, and she appealed the original divorce judgment and intervened in the foreclosure case also without notifying the Department. Together, according to the Department, this deprived it of "a complete picture of whether she owned the Weathersfield Property in 2012 and 2013."

*Standard*

The court reviews this case "on the basis of the record established before the Commissioner." *Piche v. Dep't of Taxes*, 152 Vt. 229, 233 (1989) (citing *State Dep't of Taxes v. Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294 (1980)). The Commissioner's decision is presumed "correct, valid and reasonable, absent a clear and convincing showing to the contrary." *Tri-State Indus. Laundries*, 138 Vt. at 294.

"In construing a taxing statute, like all statutes, our primary goal is to implement the intent and purpose of the Legislature. If a statute's meaning is plain on its face, we enforce it according to its terms." *Ran-Mar, Inc. v. Town of Berlin*, 2006 VT 117, ¶ 5, 181 Vt. 26 (citation omitted). "[I]n construing tax exemptions, the burden is on the person claiming the benefit of the exemption and the exemption statute must be strictly construed against that person." *Our Lady of Ephesus House v. Town of Jamaica*, 2005 VT 16, ¶ 14, 178 Vt. 35. "Any remaining ambiguities are resolved against the taxing power and in favor of the taxpayer." *Ran-Mar*, 2006 VT 117, ¶ 5.

4

*Analysis*

The divorce and foreclosure litigation involving Ms. Mangini and her Vermont property were significantly complicated by the fact that her ex-husband originally owned the Vermont property in his name only and stopped making payments once the divorce litigation began, and also by the fact that Ms. Mangini attempted to sever the property from the mortgage it secured in her attempt to save her interest in the home. These circumstances introduced substantial uncertainty as to the parties' rights in the property during the pendency of both cases, including appeals. What no one but the Department has ever questioned, however, is that Ms. Mangini has owned her Vermont house since the divorce court awarded it to her in its 2011 final divorce order, and has lived in it since then, including the years at issue. Nothing in the record implies that the bank or Ms. Mangini's ex-husband has ever contested that. It is only the Department that has adopted rationales to the contrary.

For the reasons stated herein, the court concludes that Ms. Mangini owned and resided at her Vermont home as her homestead in 2012 and 2013 and was entitled to the income sensitivity adjustments that she received. The arguments of the Department are addressed in the following paragraphs.

(1) *Failure to record the divorce judgment*
(4) *32 V.S.A. §§ 5401(7)(D) and 6062(e) regarding equitable title*

For purposes of this case, to have been eligible for the adjustments, Ms. Mangini must have "owned the homestead." 32 V.S.A. § 6066(a). "Homestead" means, in relevant part, "a homestead as defined under subdivision 5401(7), but not under subdivision 5401(7)(G), of this title." 32 V.S.A. § 6061(13). Subject to certain statutory qualifications, § 5401(7) defines "homestead" to mean the "principal dwelling and parcel of land surrounding the dwelling, *owned and occupied* by a resident individual as the individual's domicile." 32 V.S.A. § 5401(7)(A) (emphasis added). There is no question about occupancy in this case. The State argues that Ms. Mangini did not "own" her homestead because her ex-husband did not quitclaim it to her as the divorce court had ordered and she failed to record the divorce judgment pursuant to 15 V.S.A. § 754 when she failed to provide the town clerk with the property transfer tax return.

The State's argument is that the divorce judgment that gave Ms. Mangini the house did not convey title to her—there needed to be a conveyance from the ex-husband or a recording by operation of 15 V.S.A. § 754. The statute itself makes clear that a conveyance from the ex-husband is not necessary.[2] While the statute calls for the step of recording, it is undisputed that

---

[2] While it is customary for parties to implement a divorce decree by executing quitclaim deeds, and there are sometimes provisions in court orders to do so (as in this case), the decree itself is a declaration of right, title, and interest in the property creating and declaring the incidents of ownership held by the person to whom ownership is declared. It is true that the statute purports to require the step of recording to "convey or encumber" property decreed in a divorce judgment, and the Vermont bankruptcy court has observed that a Vermont "divorce decree is not a conveyance instrument *per se* upon entry." *In re Hutchins*, 306 B.R. 82, 92 (Bankr. D. Vt. 2004). Nonetheless, the purpose of the statute appears to be to make clear that a deed is *not*

5

Ms. Mangini presented the judgment for recording as the statute required. While the statute also called for the filing of a property tax return, the filing of a return is a statutory provision for purposes of state recordkeeping. The failure to file one in no way deprives the person of the incidents of ownership granted by the judgment. If a person buys a property and takes delivery of a deed and does not record it, the person still owns the property—he or she has just not complied with the step required to protect that interest from others who seek to claim a competing interest in it.

In this case, the problem was created by the town clerk's error in deceptively accepting the judgment for recording and then not recording it. She neither recorded it nor returned it to Ms. Mangini with the information that she could not record it without a property tax return. In making this error, the town clerk did not deprive Ms. Mangini of the ownership interest she had acquired. The town clerk did not have the legal power to do such a thing. Even if it is arguable that Ms. Mangini's interest, once she presented the judgment for recording without a property tax return, fell short of full *record* title, at the very least she had acquired equitable title. "Equitable title is defined as 'title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title.' This is a rigorous definition—one that requires not just a possibility of acquiring title, but a concrete right." *Mangini 1*, 2014 VT 26, ¶ 15 (citation omitted). The judgment in no uncertain terms gave Ms. Mangini the concrete right to legal title to the home. She had only to complete the statutory recording process to obtain record title. She was thwarted in doing so through no fault of her own but as a result of the error of the town clerk.

The State briefly asserts that equitable title is insufficient to demonstrate ownership for adjustment purposes based on a statutory qualification to the definition of homestead in the adjustment statutes. This issue requires context.

The homestead concept long predates the property tax adjustment statutes. See 27 V.S.A. §§ 101–185 and the many cases annotated under those and predecessor statutes. Under these statutes, a homestead means "[t]he homestead of a natural person consisting of a dwelling house, outbuildings, and the land used in connection therewith . . . and *owned and used* or kept by such person as a homestead." 27 V.S.A. § 101 (emphasis added). There can be no question but that, from 2011 on, Ms. Mangini's interest in the property was sufficient to demonstrate ownership for purposes of these statutes. See *Mangini 1*, 2014 VT 26, ¶ 15 (citing cases).

The definition of homestead at 32 V.S.A. § 5401(7)(A) incorporates, in relevant part, nearly the identical description of homestead as appears in 27 V.S.A. § 101 and thus presumably sweeps within it the long history of caselaw fleshing out the concept, subject to certain statutory qualifications. One such qualification, the State argues, demonstrates that equitable ownership is insufficient, 32 V.S.A. § 5401(7)(D): "[a] dwelling owned by a trust may qualify as a homestead if it meets the requirements of subsection 6062(e) of this title." The State argues that Ms. Mangini's circumstances do not satisfy 32 V.S.A. § 6062(e), but there is simply no trust involved

required for purposes of recording because it makes the alternative of recording the judgment available. This makes sense to protect people such as Ms. Mangini, whose dissatisfied ex-spouses refuse to sign instruments following a court decision.

in this case at all, so the argument has no relevance.[3]

(2) *"Grand List ownership"*

The Department has referred to what it calls "Grand List ownership." For administrative convenience it uses grand lists to determine ownership in the first instance. However, there is no requirement that homestead ownership that does not appear on a grand list renders one ineligible for an adjustment. The Department explains that an owner whose name is not on the grand list would have to come forward to demonstrate ownership. That is precisely what Ms. Mangini did.

(3) *The 2015 confirmation order*

The State argues that the foreclosure court, in its 2015 confirmation order, for the first time granted title to Ms. Mangini, the successful bidder at auction. The State reasons that it could not have granted title to her if she already had it. Therefore, it concludes, she did not have title until 2015.

---

[3] The only type of trust that could conceivably apply might be a constructive trust. See *Weed v. Weed*, 2008 VT 121, ¶ 17, 185 Vt. 83 ("A court may impose a constructive trust when a party obtains some benefit that they cannot, in good conscience, retain. 'It is a familiar principle of equity that a trust is implied whenever the circumstances are such, that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing.'" (citation omitted)). The argument would be that Ms. Mangini's ex-husband refused to turn over legal title to the home despite the judgment decree and that because she had the beneficial interest, he was holding it in constructive trust for her, but that ignores the specific terms of the divorce decree. The property was decreed to her outright and she has been in possession at all times.

Reference to the language of § 6062 further confirms Ms. Mangini owned her homestead in 2012 and 2013. Subsection 6062(e) in its entirety is as follows:

> A dwelling owned by a trust is not the homestead of the beneficiary unless the claimant is the sole beneficiary of the trust, and:
> (1) the claimant or the claimant's spouse was the grantor of the trust, and the trust is revocable or became irrevocable solely by reason of the grantor's death; or
> (2) the claimant is the parent, grandparent, child, grandchild, or sibling of the grantor, the claimant is mentally disabled or severely physically disabled, and the grantor's modified adjusted gross income is included in the household income calculation.

32 V.S.A. § 6062(e). There is no such trust in this case. The statute is referring to a trust that has a grantor and may be revocable or irrevocable as for estate planning purposes. It is not referring to the equitable remedy of a constructive trust and more importantly does not apply at all to a decree awarding outright ownership (see language of judgment quoted on page 1).

This argument makes no sense. Ms. Mangini owned a home that was security for a mortgage that encumbered the property as the result of a note and mortgage granted by a pevious owner. This is not an unusual situation. The mortgage holder foreclosed on the mortgage and when Ms. Mangini did not redeem the property, a sale was held in accordance with foreclosure law. Ms. Mangini was the successful bidder at the auction as was confirmed in the confirmation order required under foreclosure law. This does not at all mean that she was not the owner prior to the foreclosure sale. The foreclosure process allowed the mortgage holder to obtain its remedy for nonpayment of the note and it cleared the title of the mortgage encumbrance. This has nothing to do with whether Ms. Mangini owned the home in 2012 and 2013, which she did. It is not unusual for a property owner to default on a mortgage due to loss of job, divorce, or a variety of reasons causing inability to pay, and then to be able to amass the funds necessary to be the successful buyer at a foreclosure sale in order to save the home. It does not mean that the same person was not the owner of the property when the foreclosure process began.

(5) *Collateral requirements of the divorce order*

The State argues that Ms. Mangini did not own her homestead in 2012 and 2013 because the original divorce judgment granted the house to her but required her to refinance or otherwise remove her ex-husband's name from the related debt and she did not. However, the divorce judgment cannot be fairly read to make her ownership *contingent* on those actions. *Sumner v. Sumner*, 2004 VT 45, ¶ 9, 176 Vt. 452 ("Where the language of the decree is unambiguous, we apply it according to its terms."). She was given 6 months in the order to take those steps. The shift of the debt to her was for the benefit of her ex-husband as part of the overall equitable distribution of assets and debts in the divorce. Her ex-husband was ordered to quitclaim title to her immediately. Each of those obligations was a separate free-standing obligation not contingent on the actions of the other. The fact that she did not carry out her obligation to the ex-husband through a refinancing or payoff did not deprive her of the property ownership that the judgment awarded to her.

(6) *V.R.F.P. 12(d)(1)*

Despite its argument that Ms. Mangini acquired title in 2015, it argues that she could not have acquired title until 2016, after the last appeal in her divorce case was decided because V.R.F.P. 12(d)(1) automatically stayed the divorce judgments until then.

Rule 12(d)(1) extends an automatic stay of execution on the judgment throughout the appeal. There was no relevant execution needed in this case. Execution is an enforcement mechanism. The fact that enforcement steps are stayed does not change the terms of the divorce judgment during the stay. The divorce decree granted the Vermont property to Ms. Mangini in 2011. From that time forward, throughout all the time that passed while the litigations were pending, she was the one with all of the obligations and benefits of ownership. That never changed and she was in possession at all relevant times.

(7) *Ms. Mangini's good faith*

The State suggests that Ms. Mangini was not acting in good faith towards it in the course of claiming her adjustments. While such a belief perhaps explains the State's motivation in this case, the record does not show that the Department assessed her due to any bad faith. Moreover there has been no evidence to show bad faith, and even if there were, it is not a proper basis, on its own, to deny an adjustment.

The State claims that she knew all along that she did not own the Vermont property, that she did not keep the Department informed about her divorce case and the foreclosure case so it could evaluate the whole picture, and that she knew that the bank was paying the property taxes.

The record lacks any evidence that could possibly support any inference of bad faith. Rather, it reveals that Ms. Mangini was awarded her house in her divorce and correctly understood that in fact she owned it. She then sought and received property tax adjustments to which she in fact was entitled. The status of those adjustments was called into question when it was found that her ownership was not reflected in the grand list due to an error by the town clerk. She then clarified to the Department that in fact she is the owner. The State did not (and does not) describe any facts specifically that it needed to determine her claim that she did not provide. She again clarified that she is the owner before the Commissioner. Now she has done it a third time. There was no requirement that she keep the Department informed of each step in the divorce and foreclosure cases. It is customary for banks and other mortgage holders to pay property taxes not paid by the owner in order to protect their interests to the extent possible and prevent unnecessary costs for penalties and interest. The fact that a mortgage holder chooses to do so is not evidence of bad faith on the part of the owner.

## ORDER

For the foregoing reasons, the Commissioner's Determination is reversed. The Department's assessments related to Ms. Mangini's 2012 and 2013 property tax adjustments are void.

Dated at Montpelier, Vermont this 7th day of April 2017.

_____
Mary Miles Teachout
Superior Judge

9