Filed 04/23/24

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-01453

| Town of Roxbury et al v. Montpelier-Roxbury Public School District |
| --- |

Opinion and Order on Motions to Dismiss and for Preliminary and Permanent Injunction

On Town Meeting Day, March 5, 2024, voters in the Montpelier-Roxbury Public School District voted down the budget proposed for the 2024–2025 school year, prompting the Montpelier-Roxbury School Board (the "School Board" or the "Board) to revise the budget proposal. The new budget includes spending cuts reflecting, in part, a new decision to close the Roxbury pre-K to grade six school (the "Roxbury Village School") and bus those students to Montpelier. The revised budget proposal is set for a vote on April 30. On April 16, Plaintiffs the Town of Roxbury and Roxbury residents Melissa Rutter and Lawton Rutter, disappointed with the outcome of the March 5 vote, initiated this case to contest that election.

Plaintiffs claim that the School Board was required by 17 V.S.A. § 2680(h) to hold a "public informational hearing" about the budget "within the 10 days preceding" the vote. They assert that the Board failed to do so insofar as it held the informational hearing only online and during voting hours on March 5, depriving voters of a fair opportunity to know what the proposed budget provided. They also assert that proper notice was not provided for the hearing. As relief, they ask the Court to enjoin the Board from holding a vote on the revised proposal and grant a writ of mandamus commanding

the Board to hold a new vote, after a properly conducted informational hearing, on the original budget that did not propose to close the Roxbury Village School.

Along with the complaint, Plaintiffs filed a motion requesting what they characterize as both a preliminary and permanent injunction. What they seek in the motion is all the final relief they seek in the complaint, a permanent injunction barring the April 30 vote on the revised budget and a writ of mandamus ordering a redo of the vote on the original budget. There is nothing preliminary about the relief sought. *See* 11A Mary Kay Kane, *et al., Fed. Prac. & Proc. Civ.* § 2947 (3d ed.) (explaining that a preliminary injunction is intended to "protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits. . . . [W]hen the grant of a preliminary injunction would effectively rob the court of its decisionmaking power, the request for relief may be treated as one for a permanent injunction." (footnote omitted)).

Defendant Montpelier Roxbury School District has opposed the motion and moved to dismiss. In both submissions, it asserts that the complaint is not timely, that a subsequent vote of the School Board validated the March 5 vote despite the alleged irregularity, that the Plaintiffs' allegations are insufficient to warrant the extreme remedy of invalidating a district-wide democratic vote, and that the public interest and the interests of the District weigh against granting equitable relief.

The Court held an expedited hearing on the motions on Tuesday, April 23, 2024. Both parties appeared and made arguments to the Court. Plaintiff did not object to the Court's consideration of the motion to dismiss at this juncture and responded to it on the record. The Court makes the following determinations.

I.       The Legal Standards

Plaintiffs' request for an injunction faces a high hurdle. "An injunction is an extraordinary remedy, the right to which must be clear." *Okemo Mountain, Inc. v. Town of Ludlow*, 171 Vt. 201, 212 (2000); *Comm. to Save the Bishop's House v. Medical Center Hosp. of Vt.,* 136 Vt. 213, 218 (1978); Vt. R. Civ. P. 65. Plaintiffs' request for preliminary injunctive relief requires the Court to balance a number of factors to assess the impact of granting or withholding the requested relief: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19, 205 Vt. 586, 596 (internal quotations omitted); *accord In re J.G.*, 160 Vt. 250, 255 n.2 (1993).

While the test for a permanent injunction does not require an estimate of the likelihood of success, as that issue would have been resolved in a plaintiff's favor, it requires that the Court consider similar equitable factors. As described by the United States Supreme Court:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

As for motions to dismiss, "[d]ismissal under Rule 12(b)(6) is proper only when it is beyond doubt that there exist no facts or circumstances consistent with the complaint that would entitle Plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 576 (mem.) (citing *Union Mut. Fire Ins. Co. v. Joerg*, 2003 VT 27, ¶ 4, 175 Vt. 196, 198)). In

considering a motion to dismiss, the Court "assume[s] that all factual allegations pleaded in the complaint are true, accept[s] as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume[s] that all contravening assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557,559 (mem.) (internal quotation, brackets, and ellipses omitted).

## II.    Analysis

In this instance, even accepting that the facts set out in the complaint are true, the Court concludes that Defendant's legal defenses bar Plaintiffs' claims and that, even if the Court considered the merits, Plaintiffs have not carried their burden of meeting the exceedingly high standards necessary to impose on the electorate the relief that they seek.

### A.    The Matter is Moot as the Board has Now Validated the March 5 Vote

Just yesterday, pursuant to 17 V.S.A. 2662, the Board passed a measure validating the March 5 vote. Exhibits A & B. They considered the failures noted by Plaintiffs' and, by a unanimous vote, confirmed the validity of the election. On that basis, the District asserts that this case has become moot. *See Paige v. State*, 2017 VT 54, ¶ 7, 205 Vt. 287, 291 ("A case becomes moot—and this Court loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest in the outcome of the case.").

Section 2662 allows the legislative body of a municipality (here, the Board) to cure "[e]rrors or omissions in the conduct of an original meeting that are not the result of an unlawful notice or warning" by resolution. To successfully cure such a defect requires "a vote of two-thirds of all its members at a regular meeting or a special meeting called for

that purpose, stating that the defect was the result of oversight, inadvertence, or mistake." *Id.*

This is precisely what has happened here. At a meeting on April 22, 2024, the Board adopted, by a unanimous vote, a resolution properly curing the procedural defects attending the March 5 meeting. Section 2662 provides: "When an error or omission of this nature has been thus corrected by resolution, all business within the terms of the action of the qualified voters shall be as valid as if the requirements had been initially complied with, condition, however, that the original action thereby corrected by the legislative body was in compliance with the legal exercise of its corporate powers." The defects having thus been cured, Plaintiffs no longer have any basis for contesting the validity of the March 5 vote.

To the extent that Plaintiffs argued at the hearing that the April 22 vote was ineffective because it was undertaken by the Board rather than the District voters, the Court notes that statutes provide: "Errors or omissions in the conduct of an original meeting that are not the result of an unlawful notice or warning or noncompliance within the scope of the warning may be cured by a resolution of the legislative body of the municipality by a vote of two-thirds of all its members at a regular meeting or a special meeting called for that purpose." 17 V.S.A. § 2662 (emphasis added). School districts are municipalities. 1 V.S.A. § 126 ("'Municipality' shall include a city, town, town school district, incorporated school or fire district or incorporated village, and all other governmental incorporated units."); 16 V.S.A. § 551 ("Unless otherwise specifically provided in statute with respect to a class of school district or in a municipal charter, the laws of this title, the laws pertaining to municipal corporations, and the rules of the

State Board shall apply to all school districts."). The legislative body of the school district is the school board, not the many voters of the school district.

While Plaintiffs also assert that warning defects cannot be cured solely by the legislative body, 17 V.S.A. § 2662, they take nothing from that argument in this particular case. First, Plaintiffs have provided no actual proof that notice of the informational hearing was not posted. The affidavits submitted make no such claim and, while the warning for the actual vote did not contain such a notice, there is no legal requirement that the notice for the informational meeting be in the same warning. Second, § 2662 requires a full special meeting of the electorate to cure deficiencies solely "as to notice or warning of an annual or special municipal meeting." As they provide specific details as to the matters to be voted on, warnings for such meetings have specific requirements. *See id*. §§ 2641-42. Here, however, the alleged defect with regard to notice did not concern the actual municipal meeting but only the preliminary informational meeting.

The Court concludes that failures to warn properly such an informational meeting fall within the scope of the legislative body's broad ability to cure under § 2662. Such a result is consistent with and supported by § 2641, which indicates that the type of warnings demanded of municipal meetings are not required for "municipal informational meetings at which no voting is to take place." Although § 2680(g) required a type of warning as to the informational meeting in this instance. it is not the same warning as is required for a full public meeting. As a result, any defect in a notice concerning an informational meeting can be cured by the legislative body, as the School District did with its April 22 validation vote.

Accordingly, the alleged defects in the March 5 vote have been cured, the case is moot, the Court lacks jurisdiction, and the motion to dismiss is granted on that basis.

B.    The Complaint is Untimely

Even if the matter is not moot, Plaintiffs also failed to contest this election within the period set by 17 V.S.A. § 2603.  The principal statute governing the contest of elections is Section 2603.  It applies to contests over the "election for any office, other than for the General Assembly, or public question."  17 V.S.A. § 2603(a).  Such election contests must be filed "within 15 days after the election in question."  17 V.S.A. § 2603(c).

Plaintiffs argue that § 2603 applies to elections for offices and on public questions but not on municipal budgets.  In other words, they contend that a vote on a municipal budget does not fall within the meaning of a "public question" (a budget obviously is not a candidate for office).  They reason that 17 V.S.A. § 2680, the statute that they claim has been violated, separates elections into three *separate* categories: offices, public questions, and budgets.  Section 2603, by contrast, refers only to offices and public questions.  Relying on the purported distinctions in § 2680, Plaintiffs conclude that budgets are something different from public questions and import that distinction into § 2603.  Because § 2603 does not expressly say that it applies to budgets, they maintain, neither does its temporal limitation on initiating contests.

In support of that view, they contend that, in general, "[w]hen the same word is used in various sections of the act, or in statutes *in pari materia*, it will bear the same meaning throughout, unless it is obvious that another meaning was intended."  *State v. Welch*, 135 Vt. 316, 321 (1977); *see also* Black's Law Dictionary, *in pari materia* (11th ed. 2019) (The expression means "[o]n the same subject; relating to the same matter.  It is a

canon of construction that statutes that are *in pari materia* may be construed together, so that inconsistencies in one statute may be resolved by looking at another statute on the same subject."). Such an approach does not withstand scrutiny here, however.

"Our primary objective when construing a statute 'is to give effect to the intention of the Legislature.' In effectuating that intent, '[w]e examine the plain language of the statute, and if this language is clear and unambiguous, we enforce the statute according to its terms.'" *Maple Run Unified Sch. Dist. v. Vermont Hum. Rts. Comm'n*, 2023 VT 63, ¶ 13 (citations omitted). "As a corollary of this principle, we resort to other tools of statutory construction—such as legislative history—only if the plain language of the statute is unclear or ambiguous." *In re 204 N. Ave. NOV*, 2019 VT 52, ¶ 5, 210 Vt. 572, 575; *see also H.H.*, 2020 VT 107, ¶ 18, 214 Vt. 1, 10 ("Where that statutory language is clear and unambiguous, we look no further."). To properly interpret a statute, the Court "will not excerpt a phrase and follow what purports to be its literal reading without considering the provision as a whole, and proper construction requires the examination of the whole and every part of the statute." *TD Banknorth, N.A. v. Dep't of Taxes*, 2008 VT 120, ¶ 15, 185 Vt. 45, 53 (citation omitted); *see also Ran-Mar, Inc. v. Town of Berlin*, 2006 VT 117, ¶ 5, 181 Vt. 26, 29 ("We construe all parts of the statutory scheme together, where possible, as a harmonious whole, and '[w]e will avoid a construction that would render the legislation ineffective or irrational.') (citations omitted)).

Plaintiffs' interpretation of 17 V.S.A. § 2603 is inconsistent with those tenets. Definitions for numerous terms used in Title 17—"unless the context or a specific definition requires a different reading"—appear at 17 V.S.A. § 2103. "Election" is expressly divided into two categories: candidates for offices and public questions. *See* 17

V.S.A. § 2103(11) ("'Election' means the procedure whereby the voters of this State, or any of its political subdivisions, select persons to fill public offices or act on public questions."). "'Public question' means any question, issue, proposition, or referendum (whether binding or advisory) submitted or required by law to be submitted to the voters of the State or any political subdivision of the State, for a decision." 17 V.S.A. § 2103(27). There are no definitions implying that a municipal budget presents anything other than one type of public question. There is also no indication in the statutory scheme that 17 V.S.A. § 2603 is using these expressions any differently than their formal definitions suggest. There is no statute specifically controlling contests of elections on municipal budgets.

Indeed, other sections of the corollary provisions for Australian balloting for school districts set out in Title 16 plainly indicate that budgets are but one category of "public questions." *See* 16 V.S.A. § 759 ("If the voters have approved the commingling of votes cast by Australian ballot for any or all categories of public questions, including elections and budget votes…."); *id* § 742(c) (discussing the "commingling and reporting of votes cast by voters in a unified union school district for the election of members of the district board, for the election of district officers, for proposed budgets, and for any other public question…."); *id.* § 741(b) ("The counting of Australian ballots cast by voters in a unified union school district for the election of members of the district board, for the election of district officers, for proposed budgets, and for any other public questions…."). "Public question" is not separately defined in Title 16, and its usage there is wholly consistent with its meaning in Title 17.

Plaintiffs' reliance on 17 V.S.A. § 2680 as a controlling source of meaning for § 2603 is misplaced. Section 2680 provides certain requirements that are applicable when votes are undertaken by Australian ballot. Those requirements differ depending on whether the vote is for municipal officers, budgets, or other public questions. 17 V.S.A. § 2680(b), (c), (d). By its terms, § 2680(d)(1) (public questions) expressly applies to "public questions other than the budget." There would be no need say so if budgets were something other than public questions. While § 2680 treats budgets as different from other public questions, doing so does not reflect on the meaning of those terms generally. Rather, it simply shows an intent to provide requirements on budget votes that differ from the requirements for votes on other public questions when Australian balloting is being used.

Nor can the Court fathom any policy consideration that would support Plaintiffs' interpretation of the law. Votes are important public events. Title 17 contains numerous and strict timelines for action, including petitions seeking reconsideration of votes. *See, e.g.,* 17 V.S.A. § 2661. Allowing challenges to budget votes to be brought years after they occurred defies both logic and the settled expectations of the electorate. Requiring a challenge to budget votes to be lodged swiftly, as provided in § 2603, only makes sense.[1]

Votes on budgets are subject to 17 V.S.A. § 2603 election contests. Section 2603 election contests must be initiated within 15 days of the contested election. 17 V.S.A. §

---

[1] The catch-all statute, 17 V.S.A. § 2617, presumably would apply if § 2603 did not. It includes no express temporal limitation. *See* 17 V.S.A. § 2617 ("In all cases for which no other provision has been made, the Superior Court shall have general jurisdiction to hear and determine matters relating to elections and to fashion appropriate relief."). Plaintiffs argued at hearing that the statute of limitations for civil claims, 12 V.S.A. § 511, would provide the outer boundary for such a claim. Under that statute, Plaintiffs would have six years, well into 2030, to contest the budget for the 2024-2025 school year.

2603(c). This case was not initiated within 15 days of the March 5 election. Accordingly, the case is subject to dismissal on that basis.

### C. Plaintiffs Have Failed to Establish the Extraordinary Grounds Needed to Upset a Concluded Election

#### 1. *The Merits of the Claim for Injunctive Relief*

Even if the Court were to reach the merits and conclude, as Plaintiffs urge, that a procedural error—notice, timing, and conduct of the informational hearing—occurred, the equitable relief Plaintiffs seek does not follow.[2] The Vermont Supreme Court has made clear that election invalidation is a most extraordinary remedy. *See Putter v. Montpelier Public School System*, 166 Vt. 463, 467 (1997). In describing the prospect of such a judicial order, the Court stated: "Nothing is so profoundly destabilizing to the local political process." *Id.* "In determining whether such drastic relief is warranted, courts have focused on several key considerations, including the nature and severity of the . . . violation, the probability that it actually affected the election result, the presence or absence of culpable intent, and the harm to the organic processes of the election." *Id.* at 468. The asserted basis for invalidation "must be, at a minimum, expressible in concrete terms of votes cast, collected, and/or tallied." *Paige v. State*, 2024 VT 7, ¶ 12.

Plaintiff's affidavits here, while establishing that one voter did not know of the informational meeting, fail to meet the rigorous standards described above. Plaintiffs have argued that the injury that the Court should consider under *Putter* is the closure of the Roxbury Village School, a matter decided by the Board after the vote. But the harm

---

[2] The Court would not normally continue with its analysis in light of the legal determinations made above. Given the short timeline until the April 30 vote and the possibility of appellate review, the Court deems it prudent to address all of Plaintiffs' claims.

of consequence under *Putter* is that inflicted upon the electoral process. Plaintiffs also have asserted that the matter put to the voters on March 5 was so complex and consequential that the Court should infer that the irregularity with the informational hearing had a significant impact. That influence, however, as described in *Paige*, must in some manner be expressible in terms of votes cast; and Plaintiffs have not alleged or come forward with actual evidence that the notice, timing, or conduct of the informational hearing had any significant effect on the March 5 vote, which failed by more than 250 votes. This is plainly insufficient to warrant the extraordinary relief requested under the standards set out in *Putter* and *Paige*.

### 2. *Irreparable Harm*

The Court does not question the real harms averred to by Plaintiffs that will likely accompany the closing of the Roxbury Village School. Without doubt, the School is an important part of the community and, if the budget passes in its present form, the loss to the Roxbury community will be immense. Similarly, busing children a fair distance each day to Montpelier is no small thing to the children and their families.

On the other hand, the March 5 vote was not a vote on whether to close the School. The Board came to that decision as a policy matter thereafter. While Plaintiffs contend that the remedy they seek through a revote may save the School, the Court does not believe the Board would be bound to resubmit the original budget to the voters. Even if Plaintiffs were entitled to some relief, they do not explain why they should get to choose the budget that gets presented in the second vote. If the Court invalidated the March 5 vote, the Board must hold a second vote regardless of additional Court order. Under such circumstances, the Court sees no legal grounds for requiring the Board to submit

the same budget that failed on March 5. The Board would be free to propose the budget it wished and, if the unanimous April 22 validation vote provides insight, it might well decide to submit the same budget that is proposed for the April 30 vote.

Additionally, other democratic remedies are also available to Plaintiffs. They can attempt to rally public support to save the Roxbury Village School and defeat the budget on April 30. If the budget is approved on April 30, they can, again, attempt to garner the backing of the citizens in support of the School and seek reconsideration of the vote under 17 V.S.A. § 2661.

No doubt, the loss of the School is an irreparable harm. It is not likely, however, that invalidating the March 5 vote would have any chance of averting that consequence.

### 3.  *Harm to Defendants and Others*

It is also beyond cavil that holding an entirely new vote on a budget would have significant consequences and costs to Defendant. It has spent time and effort debating, voting on, warning, and explaining the revised budget. It has been warned for April 30, and Plaintiffs did not dispute that voting is underway. Forcing it to start that process over again at this late stage results in additional delays. Further, there is no certainty that any newly submitted budget vote would pass at a later point. The Board would then be without an approved budget heading into the summer.

As noted, voting has already begun on the revised budget. A decision of this Court nullifying the March 5 vote and enjoining the April 30 vote would have the additional negative effect of invalidating the votes of those who have already voted in the election.

In addition, as noted by Defendants, other aspects of the March 5 vote actually were passed by the voters. Specifically, the vote approved the creation of a capital

reserve fund, an audit surplus, and the Board's salaries. Were the Court to invalidate the vote, those approvals would fail as well and, potentially, may either not be part of a revised budget proposal or may be rejected by the voters at a second vote. Those currently vested interests, whether viewed through the lens of specific individuals or the District itself, would be put at risk if Plaintiffs' relief were granted.

### 4. *The Public Interest*

The School Board has now acted and has voted to sanction the results of the election despite the alleged irregularities noted by Plaintiffs. While it is often difficult to determine the public interest, the vote of the duly elected representatives of the people in the District—including the two Board members representing the Town of Roxbury—is a strong indicator. *Cf. Able v. United States*, 44 F.3d 128, 131 (2d Cir.1995) ("[G]overnmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.").

Additionally, *Putter* and the high bar set there plainly establish that the public interest typically favors the finality electoral contests. It is only in truly extraordinary circumstances and where palpable proof of impact on the vote is brought forward that a vote can be thrown out. This is not such a case.

### III. Conclusion

Vermont has long labored over how to fund its schools. The struggle has been keenly felt this year in many school districts, including Montpelier-Roxbury. There, the Board's initial school budget was rejected by the voters. The Board chose to craft a revised budget that proposes eliminating the Roxbury Village School, which has been a

vital and cherished part of the Roxbury community for generations. To paraphrase Daniel Webster, there can be little doubt that: "It is a small school. Any yet, there are those who love it." The revised budget goes before District voters on April 30. While Plaintiffs have pointed out some irregularities with the informational meeting that preceded the March 5 vote, their attempt to undo that election and block the upcoming vote is moot, untimely, and fails to meet the exceedingly exacting standards required to obtain such relief.

Accordingly, for the foregoing reasons, the Defendant's motion to dismiss is granted, and the motion for emergency injunctive relief is denied.

Electronically signed on Tuesday, April 23, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge