STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 69-6-19 Vtec |

| | |
|---|---|
| Zlotoff Foundation Inc. NOV (2) | DECISION ON MOTIONS |

This appeal, which is coordinated with a municipal enforcement action (Docket No. 17-2-20 Vtec), relates to two municipal Notices of Violation ("NOVs") issued to the Zlotoff Foundation, Inc. ("the Foundation") by the Town of South Hero ("Town") Zoning Administrator. The Foundation appeals a decision of the Town of South Hero Development Review Board ("DRB") denying its appeal of the NOVs. AIR Development LLC ("AIR" or "AIR Development"), the owner of the property at issue in one of the NOVs, has intervenor status in this matter.

The Foundation is represented by Brian P. Monaghan, Esq. The Town is represented by William Andrew MacIlwaine, Esq. Brian P. Monaghan, Esq. also represents Intervenor AIR Development. Presently before the Court is the Foundation's motion for summary judgment and the Town's cross-motion for summary judgment.

**Standard of Review**

We will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable through V.R.E.C.P. 5(a)(2). We accept as true all of the nonmovant's allegations of fact, as long as they are supported by affidavits or other evidence. White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). In considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

**Procedural Background**

We recite the following background information, which we understand to be undisputed, for the sole purpose of providing the appropriate context for considering the pending motions.

1

For approximately the last decade, the Foundation has curated the Arnold Zlotoff Tool Museum on the second floor of a leased barn ("the Museum") on the Apple Island Resort in South Hero, Vermont. In 2016, the Town of South Hero Zoning Administrator ("ZA") sent advisory letters to AIR Development, the owner of the Apple Island Resort, asking AIR to apply for conditional use and site plan approval for the Museum. On August 3, 2016, an applicant identified as the Apple Island Resort applied for the necessary permits. After a joint hearing, the Town of South Hero Zoning Board of Adjustment ("ZBA") issued conditional use approval and the Town of South Hero Planning Commission ("PC") issued site plan approval. The written decisions were issued, with conditions, on November 30 and December 7, 2016. Shortly after the ZBA and the PC issued the approvals, Museum Director Ted Ingraham wrote to the ZA pointing out certain errors in the written decisions. The ZBA and the PC subsequently issued corrected decisions.

The Foundation continued to operate the Museum and began using the first floor of the Museum building to display a collection of classic cars called the Z Motorsports Collection ("car collection").

The Foundation owns property abutting the Apple Island Resort, at 166 Landon Road in South Hero. In 2015, the Foundation applied for and received state and local permits to construct an 11,500 square-foot garage ("the Garage") on the property. After the Garage was constructed, the Foundation began using it as the "essential storage and repair location" for vehicles from the car collection. This freed up space on the first floor of the Museum building, which had been used to maintain vehicles in the past.

On February 26, 2019, the ZA issued two Notices of Violation ("NOVs") to "Zlotoff Foundation c/o AIR Development." One NOV addressed the Museum ("Museum NOV"), alleging that the public display for the car collection on the first floor exceeded the scope of the permitted use. The other NOV addressed the Garage ("Garage NOV"), alleging that the Garage's use as a storage and maintenance facility for the car collection brought it into association with the Museum and outside the scope of its permitted use as an "Independent Structure." The Foundation subsequently appealed both NOVs to the DRB.[1]

---

[1] On January 1, 2017, the Town established the DRB to replace the ZBA and subsume the development review responsibilities of the PC.

The DRB issued a decision upholding both NOVs on May 29, 2019, and the Foundation appealed the DRB's decision to this Court on June 19, 2019.

**Factual Background**

We recite the following facts, which we understand to be undisputed unless otherwise noted, based on the record now before us and for the sole purpose of deciding the pending motions. The following are not specific factual findings with relevance outside of this summary judgment decision.[2] *See* Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)).

1. Zlotoff Foundation, Inc. ("the Foundation") is a 501(c)(3) non-profit corporation registered in Michigan, with a principal place of business at 280 Daines Street, Third Floor, Birmingham, Michigan.

2. The Foundation is organized for charitable, educational, and conservation purposes. Some years ago, the Foundation received approval from the IRS to modify its designation under 26 U.S.C. § 501(c)(3) such that its stated purpose includes a reference to the display of classic vehicles.

3. The Foundation operates a museum in a 2-story renovated barn ("the Museum"), where it displays a collection of early American tools called the Arnold Zlotoff Tool Collection ("tool collection"). The tool collection is housed on the second floor.

4. The Foundation does not charge admission for entry to the Museum.

5. The Foundation also displays a classic car collection called the Z Motorsports Collection ("car collection"). Approximately 7 vehicles from the car collection are displayed on the first floor of the Museum, on a rotating basis. Prior to 2016, the first floor of the Museum was generally not open to the public: it was used to repair and maintain vehicles.

6. The Museum is located on property known as the Apple Island Resort ("Resort") in South Hero, Vermont, which is owned by AIR Development, LLC ("AIR").

---

[2] Both parties have consistently disputed certain facts only "to the extent" that such facts might create an implication in favor of the other party's argument. We note that summary judgment will not be decided based on implications, and the actual information recited here is understood to be undisputed.

7. AIR is a for-profit organization, and it leases the Museum building to the Foundation. AIR's business address in Michigan is the same as that of the Foundation.

8. In April and June of 2016, the ZA sent letters to AIR noting that she had become aware that the barn on the Resort Property "may be being used as a [public] museum, displaying an antique tool collection." The ZA asked AIR to apply for Conditional Use approval from the ZBA and Site Plan approval from the PC.

9. On August 3, 2016, "Apple Island Resort" applied for Conditional Use and Site Plan Review. AIR was listed as the property owner. The application listed the proposed use as "Tool Museum" and described the site as "Inside 6500 SF barn near resort office."

10. The Foundation was not listed as an applicant on the application. The Foundation's involvement in the Museum was identified in subsequent communications.

11. The ZBA and the PC conducted a joint hearing over two meeting in October and November 2016.

12. The ZBA issued a decision granting Conditional Use approval, with conditions, on November 30, 2016. The ZBA stated that the Resort had "request[ed] a joint hearing for a condition use and site plan review for a Tool Museum located on the second floor of a 2-story barn." The ZBA also found that "the first (ground) floor of the barn is used by the Resort for storage and is not open to the public. A restroom on this floor is available to Museum staff only."

13. The ZBA's Condition 7 stated: "The number of special events related to the Tool Museum outside of operating hours shall be limited to 6."

14. The PC issued a decision granting Site Plan approval, with conditions, on December 7, 2016.

15. Following the approvals, the Museum Director Ted Ingraham wrote to the ZA noting errors in the written decisions and requesting certain changes. Mr. Ingraham stated:

> While the ground floor is not currently being utilized, except by the museum staff for bathroom facilities, the space is not currently, nor will it be used by the resort. The Zlotoff Foundation, which funds the Museum, is leasing the entire barn structure from the resort and as director I am requesting that the wording of the ZB[A]'s Conditions (November 30th) and the PC's Findings (December 7th) be changed to reflect the same.

4

As reflected in the Conditions outlined in the ZBA's Decision we are permitted to hold up to 6 "Special Events" per year for which we may use utilize the ground floor.

16. On December 15, 2016, Mr. Ingraham wrote to the ZA again, stating:

The owner just wanted to make sure the Zlotoff Foundation was recognized as leasing the entire barn structure for the museum and not just the upper floor. As I mentioned it would be a great space to hold special events like demonstrations without endangering the exhibits on the upper floor.

17. In response to Mr. Ingraham, the decisions of the ZBA and the PC were corrected. The ZA issued a letter stating:

Enclosed are the corrected Planning Commission and Zoning Board of Adjustment decisions for the Zlotoff Tool Museum reflecting that the museum has the use of both floors of the barn. ZBA Finding #9 and Planning Commission Finding #2 have been corrected, as have the ZBA's Condition allowing for the use of the entire building for special events.

18. The corrected ZBA decision includes the following finding: "The lower level of the museum is currently empty and is used by the museum. There is a rest room on the lower level for employee use only; a public rest room is in the Resort Office." The corrected PC decision contains nearly identical language.

19. The corrected ZBA decision includes changes to Condition 7 to reflect the use of the first floor: "The number of special events related to the Tool Museum outside of operating hours, and to include the use (as necessary) of the ground floor, shall be limited to 6 per year."

20. While the Foundation does not own the Museum building or the Resort Property, it does own abutting property at 166 Landon Road in South Hero, Vermont ("The Garage Property").

21. In 2015, the Foundation applied for and received state and local permits, including site plan approval, to adjust the boundary of the Garage Property and to construct a 11,500 square-foot garage ("the Garage") accessible off Landon Road. The Town issued a Certificate of Occupancy for a "Garage – private car collection" in 2016, which was filed in the land records. There was no appeal of the Certificate of Occupancy.

22. The Foundation's 2015 "Application for Conditional Use or Site Plan Review" described the proposed use as "Private Garage (Structure, Independent)."

23. After the Garage was approved and constructed, the Foundation began using it as the "essential storage and repair location" for vehicles from the car collection. This freed up space on the first floor of the Museum, which had been used to maintain vehicles in the past.

24. On February 6, 2019, the ZA sent two "7-day notice[s] for zoning violation[s]" to "AIR Development" at AIR's Michigan address. One letter related to the Museum and the "Z Motorsports Collection," while the other related to the Garage at 166 Landon Road.

25. On February 26, 2019, the ZA sent two Notices of Violation ("NOVs") to "Zlotoff Foundation c/o AIR Development." The NOVs were sent to the Michigan address shared by AIR and the Foundation.

26. The NOV concerning the Museum ("Museum NOV") alleged that existing conditional use and site plan approvals were for the second floor of the Museum building only. The NOV further alleged that displaying the car collection on the first floor constituted an enlargement of the original conditional use.

27. The NOV concerning the Garage ("Garage NOV") alleged that "[t]he garage's association with Z Motor Sports museum at Apple Island Resort violates its definition as an 'Independent Structure' under the Regulations."

28. Both NOVs stated that the Foundation "was given the opportunity to cure the violation" by applying for additional review "but did not respond by the February 14, 2019 deadline noted in the warning letter[s]" sent on February 6. The NOVs also advised: "You have the right to appeal this decision with the Development Review Board."

29. The Foundation appealed both NOVs to the DRB by letters dated March 12, 2019.

30. The DRB held a hearing on the Foundation's appeals on May 8, 2019 and issued a decision upholding both NOVs on May 29, 2019.

31. Regarding the Museum, the DRB found:

> 1. Prior Conditional Use and Site Plan Reviews were for only a Tool Museum on the second floor of the subject structure. . . . The first floor use was designated for storage and use of the existing restrooms by employees only. . . . 3. Since last summer (2018) Z Motor Sports has transported and displayed at limited times vehicles (stored in a Landon Road garage facility) on the lower floor of the museum building.

32. Regarding the Garage, the DRB found:

6

1.      Prior Site Plan review and approval were for a private garage, for the enjoyment of Mr. Zlotoff and classified as an Independent Structure (Table 2.2 Regulations) . . . .  Since last summer (2018) the Zlotoff Foundation garage facility has been associated with the use of the lowe[r] floor of the museum building. . ..  The garage now supports the commercial use of the museum building.”

33.    Mr. Zlotoff has stated that the Museum has been visited by "more than 1000 people" since it opened, and "while visitors primarily come from the US and Canada . . . there have also been visitors from other parts of the world."  The Museum has hosted events and has been identified as a destination point that brings travelers to South Hero and the Resort.[3]

34.    Mr. Zlotoff has also stated that the Garage "provides a designated space for meetings that are necessary to conduct museum business," along with administrative support for the museum property and the vehicle collection.  The garage is "necessary to support the Museum by housing, storing, intaking, preparing for shipping, maintaining, and repairing its automobiles."

35.    The Foundation appealed the DRB's decision upholding the Museum NOV and the Garage NOV to this Court on June 19, 2019.

## Discussion

The Foundation's motion for summary judgment asserts that the NOVs should be dismissed because the Foundation is operating in compliance with valid, preexisting municipal permits.  As to the Museum NOV, the Foundation argues that the final permits granted by the Town allow for displays on both floors of the Museum building, and that there is no change or enlargement in the approved use.

As to the Garage NOV, the Foundation argues that the Garage is an Independent Structure under the Regulations and is therefore lawful under the existing approval.  The Town has filed a cross-motion for summary judgment arguing that the Foundation lacks standing to appeal the Museum NOV, and that both NOVs are valid as they were issued in accordance with the Regulations.  The Town has also included a standing challenge in its opposition to the

---

[3] The Town's Statement of Undisputed Material Facts, citing Mr. Zlotoff's affidavit and Ms. Taylor-Varney's affidavit, sets forth these two facts as relating to the Garage.  Town's Statement of Undisputed Material Facts at ¶ 37.  The affidavits of Mr. Zlotoff and Ms. Taylor-Varney confirm that these facts relate to the Museum, not the Garage. *See* Foundation's Motion for Summary Judgment, Attachment 1 (Affidavit of Paul Zlotoff), at ¶ 24; Affidavit of Martha Taylor-Varney, at ¶ 36.  We assume that the mistake was inadvertent.  However, we also note that the Town's use of these facts in its briefing was misleading at best, and we encourage the Town to strive for greater clarity in the future.

7

Foundation's motion for summary judgment. We begin with that issue because standing relates to this Court's subject-matter jurisdiction. *See* Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8, 182 Vt. 234.

I.      Whether the Foundation has Statutory Standing to Bring This Appeal

The Town contends that the Foundation lacks standing to appeal the DRB's decision regarding the Museum NOV, because it is not an "interested person" as defined under 24 V.S.A § 4465(b)(1). Any party who (1) is an interested person as defined by statute and (2) participated in the municipal proceeding below may appeal a decision rendered in that proceeding. See 24 V.S.A. § 4471. This statutory right of appeal, or "statutory standing" requirement, supplements the constitutional standing requirement applicable in all Vermont courts. *See* In re Capitol Plaza 2-Lot Subdivision Nos. 3-1-19 Vtec and 4-1-19 Vtec, slip op. at 2–3, 5 (Vt. Super. Ct. Envtl. Div. Nov. 12, 2010) (Walsh, J.) ("[T]he statutory requirements for appeal may coexist and overlap with constitutional standing requirements, but they are not the same."). It is undisputed that the Foundation participated before the DRB below, but we must determine whether the Foundation qualifies as an interested person in this matter.

Under 24 V.S.A. § 4465(b), the Legislature has provided five different definitions for "interested person" including:

> A person owning title to property . . . affected by a bylaw, who alleges that the bylaw imposes on the property unreasonable or inappropriate restrictions of present or potential use under the particular circumstances of the case.

24 V.S.A. § 4465(b)(1). The Town argues that the Foundation cannot meet this definition because it does not own title to the Resort Property or the Museum building itself. The Foundation presents several alternative arguments in support of its standing, including the idea that its purported "perpetual lease" of the Museum building provides the indicia of ownership necessary to create a type of equitable title. However, the Foundation's most straightforward argument is that it qualifies as an interested person under a different section of the statute: § 4465(b)(3). For the reasons stated below, we agree.

Pursuant to § 4465(b)(3), a party who is not the owner of the subject property must satisfy three requirements for interested person status. First, the party must own or occupy property "in the immediate neighborhood" of the subject property. 24 V.S.A. § 4465(b)(3). Second, the

8

party must be able to "demonstrate a physical or environmental impact" to his or her interests, effectively an injury-in-fact, "under the criteria reviewed" by the municipal panel in reaching its decision. Id. Lastly, the party needs to take the position that the act or decision of the municipality, "if confirmed," will not "accord with the policies, purposes, or terms of the plan or bylaw of that municipality." Id.

The Foundation owns and occupies property in the immediate neighborhood. It owns the Garage Property at 166 Landon Road, abutting the Resort Property where the Museum sits. It also operates the Museum that is the subject of the NOV, and it leases the Museum building from AIR Development. To "demonstrate a physical or environmental impact" on its interests, the Foundation alleges it will lose the ability to display the car collection at the Museum if the NOV is upheld. *See* id. Displaying classic vehicles is part of the Foundation's stated purpose as an organization.

Furthermore, it is apparent to the Court that the Foundation has an interest in the approved uses at the Museum. It is the operator of the Museum and the lessee of the Museum building. While the Foundation was not listed as an applicant for the 2016 conditional use and site plan approvals, its use of the Museum building to display vehicles on the first floor was identified in the NOV as the cause of the alleged violation. An adverse decision that were to uphold the Museum NOV would have a direct impact on the Foundation's use of its leased space.

The Foundation need not definitively prove an impact at this stage, rather it must offer evidence sufficient to show the "reasonable possibility" of "a non-speculative" physical or environmental impact to its interests. In re Equinox Sq. Assocs. Change of Use Permit, No. 64-5-14 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Oct. 31, 2014) (Durkin, J.) (citation omitted). The loss of the vehicle display space on the Museum's first floor is a concrete, non-speculative impact – and one that has a reasonable possibility of occurring.

Finally, as relevant to the third element, the Foundation takes the position that its use of the Museum's second floor is not an "enlargement" of a conditional use, that the use was approved under the Regulations, and that the NOV is therefore invalid. *See* Foundation's Motion for Summary Judgment at 14–16, 1–2, filed Nov. 20, 2019 [hereinafter Foundation's Motion]. The third element of § 4465(b)(3) requires an allegation "that the decision or act, if confirmed,

9

will not be in accord with the policies, purposes, or terms of the plan or bylaw of that municipality." 24 V.S.A. § 4465(b)(3). Case law on this topic has been limited, but there is sufficient guidance for us to conclude that the Foundation has satisfied the requirement.

The Vermont Supreme Court has interpreted a prior iteration of the statute in <u>Kalakowski v. John A. Russell Corp</u>., 137 Vt. 219 (1979). Prior to 2005, similar statutory language to that in § 4465(b)(3) was found in § 4464(b)(3).[4] In <u>Kalakowski</u>, neighboring property owners appealed a permit issued to an applicant and the applicant asserted that the neighbors lacked standing to appeal. Interpreting what we now refer to as the third element of § 4465(b)(3), the Court held that the statute was not designed "to establish a formula for pleading." <u>Id</u>. at 222. The Court noted that the purpose of Chapter 117 is "to provide for review of all questions arising out of or with respect to the implementation by a municipality of this chapter," and concluded that "a claim that the decision is inconsistent with the regulations . . . sufficiently established standing to appeal." *See* <u>Kalakowski</u>, 137 Vt. at 222–23; *see also* 24 V.S.A. § 4473. In this case, the Foundation contends that the Museum NOV is improper and should not be upheld on appeal. This is a sufficient allegation that the municipal "act, if confirmed, will not be in accord" with the purposes or terms of the Regulations. See 24 V.S.A. 4465(b)(3).

For these reasons, we conclude that the Foundation is an interested person as defined under § 4465(b)(3), and has demonstrated statutory standing to maintain its appeal of the Museum NOV. We must therefore **DENY** the Town's Cross-Motion for Summary Judgment as it relates to the Foundation's standing.

II.     The Foundation's Motion for Summary Judgment

The Foundation's motion seeks the dismissal of the Museum NOV and the Garage NOV, on the basis that its activities at the Museum and the Garage are within the scope of existing permits.[5] As a preliminary matter, both parties have asserted that the existing permits in this

---

[4] At that time, 24 V.S.A. § 4464(b)(3) read as "[a] person . . . who alleges that the decision or act, if confirmed, will not be in accord with the polices, purposes or terms of the plan of that municipality." Many of the provisions of title 12, chapter 117 were reorganized as part of the Permit Reform Act of 2004.

[5] The Foundation's Question 14 in this appeal asks: "Should the South Hero Zoning Administrator's February 26, 2019 Notice of Violation as to Appellant's Museum be dismissed?" Statement of Questions, filed July 8, 2019. Question 6 asks: "Should the ZA's February 26, 2019 Notice of Violation as to Appellant's garage structure be dismissed?" <u>Id</u>.

case are final and binding. It is undisputed that there was no appeal of the conditional use or site plan approvals for the Museum, issued in 2016 by the ZBA and the PC, respectively. It is also undisputed that there was no appeal of the 2015 site plan approval or the 2016 certificate of occupancy for the Garage, issued by the PC and the ZA respectively. We can therefore conclude that these permits and the certificate of occupancy are final and cannot be challenged.[6] See 24 V.S.A. § 4472(a) (appeal of zoning decisions is the "exclusive remedy" for interested persons); In re Hopkins Certificate of Compliance, 2020 VT 47, ¶ 10 (Vt. June 19, 2020) ("[W]e have repeatedly recognized that § 4472 . . . forecloses any collateral attack on an unappealed zoning decision."). We now address the Foundation's motion as to each NOV in turn.

### a. The Museum NOV

The Museum NOV asserts that the existing conditional use and site plan approvals for the Museum were for the second floor of the Museum building only. The Foundation displays the car collection on the first floor, and the NOV alleges that the display constitutes an enlargement of the approved conditional use. On May 29, 2019, the DRB issued its decision upholding the Museum NOV and finding that "[p]rior . . . reviews and approvals were only for a Tool Museum on the second floor of the subject structure." Our review of the Foundation's appeal from the DRB's decision is *de novo*. *See* 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). The Foundation now moves for summary judgment dismissing the Museum NOV, asserting that the existing approvals authorize the use of both floors of the Museum and that displaying items on the first floor is not an enlargement of the approved conditional use.

To the extent the Foundation argues that the Museum NOV represents an impermissible collateral attack on final permits, we must disagree. While a town may not collaterally attack the terms of a final and binding permit, a town is free to enforce the terms of that permit after it has become final and binding. *See* In re Barry, 2011 VT 7, ¶ 19 (quoting Hanson-Walbridge Funeral

---

[6] The Foundation's Questions 1 and 7 ask whether the existing approvals for the Museum and the Garage are final under 24 V.S.A. § 4472(a). *See* Statement of Questions. We can now answer Questions 1 and 7 in the affirmative.

Home, Inc., 139 Vt. 288, 292 (1981)).  The real issue here is one of permit interpretation; the parties dispute what is authorized or prohibited under the existing approvals.[7]

The Foundation contends that the permits do not expressly prohibit Museum displays on the first floor, and that unstated or implied conditions "may not be imposed on the permittee."[8] *See* In re Kostenblatt, 161 Vt. 292, 299, 640 A.2d 39, 44 (1994) (citation omitted).  For its part, the Town argues that the permits approved the public use of the second floor only, with the first floor reserved for storage, bathrooms, and a limited number of special events.  According to the Town, the proposal presented to the ZBA and the PC did not contemplate public displays on the first floor, and the Foundation is bound by the proposal presented to the ZBA and the PC.

We agree with the Foundation that the permits do not expressly prohibit operating the Museum on the first floor.[9]  *See* Agency of Nat. Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573

---

[7] Questions 8 in the Foundation's Statement of Questions asks: "Is the South Hero Zoning Administrator's February 26, 2019 Notice of Violation an impermissible collateral attack on Appellant's museum use, which was approved in the December 7, 2016 PC decision and the November 30, 2016 ZBA decision?"  For the reasons above, we answer Question 8 in the negative.

[8] The Foundation also argues that the permits do not regulate the types of items displayed in the Museum, and the choice to display cars, tools, or other items is entirely at the discretion of the Foundation and the Museum staff.  At this stage, we cannot say that the types of items on display are particularly relevant.  We must decide whether the existing approvals allow the Foundation to operate a public museum on both floors of the Museum building.  If the use is restricted to the second floor, any display on the first floor would create a permit violation.

[9] The ZBA issued its corrected conditional use approval subject to the following 9 conditions:

1. In light of the fact that this matter was heard jointly with the Planning Commission, where any portion of this permit and its conditions are in conflict with the Planning Commission's decision, the stricter of the provisions or conditions shall apply.
2. Applicants shall comply with all evidence as presented at the hearing or as amended by this decision.
3. Applicant shall apply for sign permits for the barn-mounted and sandwich board signs advertising the museum.  The sandwich board sign at the entrance to the Resort will not impair the site line in either direction
4. Times of operation will be 10AM to 4PM from May 1 to October 31 (any day of the week).
5. Should attendance increase to over an average of 65 per day, Applicant shall come back for further review.
6. Applicant shall contact VTrans regarding any required amendment to their State Highway Access (1111) Permit.
7. The number of special events related to the Tool Museum outside of operating hours, and to include the use (as necessary) of the ground floor, shall be limited to 6 per year.
8. Applicants shall obtain, and conform to, all required Federal, State, and Local permits.  Copies of all permits shall be provided to the Town.
9. The Town of South Hero's responsibilities are limited to ensuring compliance with the approvals and permits issued by the Town of South Hero. . . .

Foundation's Motion, Attachment 3, Exhibit I, at 4.

(2003) (in construing permit conditions, the "plain meaning of the words" is generally presumed to express the drafters' intent) (citations omitted). However, the Foundation's position that "[t]here can be no unexpressed conditions in the grant of permits by the Town" oversimplifies the permit requirements in this case. Applicants have a "duty to disclose the intended use of [the] property 'truthfully[, fully,] and accurately.'" *See* In re Kostenblatt, 161 Vt. at 298 (quoting Town of Bennington v. Hanson–Walbridge Funeral Home, 139 Vt. 288, 294 (1981)). And where, as here, the project is approved "pursuant to the plans, specifications, and site plans admitted into evidence,"[10] the proposal presented for approval is itself a permit condition. *See* In re Jackson, 175 Vt. 304, 315 (2003) (quoting In re Duncan, 155 Vt. 402, 410 (1990)).

The Foundation cites In re Kostenblatt for the proposition that "[c]onditions . . . not stated on the permit may not be imposed on the permittee," and notes that conditions "must be expressed with sufficient clarity to give notice of the limitations on the use of the land, and cannot incorporate by reference statements made by an applicant at a hearing." Kostenblatt, 161 Vt. at 299, 298 (quoting In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978)). Kostenblatt does uphold this principle, however the permit at issue in that case contained no written findings and only two conditions, neither of which required the project to be constructed or used in conformance with the evidence presented for review. *See* id. at 295, 299. The Kostenblatt Court specifically noted that conditions requiring applicants "to complete [a] project consistent with the Board's findings and conclusions and the approved plans and exhibits . . . can be imposed in zoning cases." *See* id. at 299 (quotation omitted). Here, Condition 2 requires the Foundation to "comply with all evidence as presented at the hearing or as amended by this [permit]." Foundation's Motion, Attachment 3, Exhibits I, J, at 4. Thus, we must "determine the proposal presented to understand the permit requirements." *See* Kostenblatt, 161 Vt. at 299.

---

For the sake of clarity, we specifically reference the corrected conditional use permit through the remainder of this discussion rather than the corrected site plan permit. This is appropriate for two reasons: (1) the issue here relates to the use of the building rather than the site plan, and (2) the conditional use permit contains all relevant conditions and findings with no material omissions as compared to the site plan permit.

[10] The Vermont Supreme Court found this language "sufficiently specific to ascertain what has been approved." In re Duncan, 155 Vt. 402, 410 (1990). Both permits in this case include Condition 2, stating: "Applicants shall comply with all evidence as presented at the hearing or as amended by this decision." While the language is less precise than other examples, we conclude that it provides "fair notice to interested parties that they [must] . . . determine the proposal presented to understand the permit requirements." *See* In re Kostenblatt, 161 Vt. 292, 299, 640 A.2d 39, 44 (1994).

13

It is at this point that we conclude that the evidence before us precludes summary judgment in the Foundation's favor. Giving the Town the benefit of all reasonable doubts and inferences (as the non-moving party), we conclude that there is a genuine dispute of material fact concerning the proposal submitted to, and conditioned by, the ZBA and the PC. *See* City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. The Foundation contends that it applied for and received approval to operate the Museum on both floors, citing to the conditional use application; communications from Museum Director Ted Ingraham to the Town; and the subsequent corrections to the ZBA and PC decisions. The application listed the proposed use as "Tool Museum" and described the site as "Inside 6500 SF barn near resort office." According to the Foundation, the reference to all 6500 square-feet in the Museum building implies that the application sought approval to use the entire building. After the initial approvals were issued, Mr. Ingraham wrote to the ZA requesting clarification of the written decisions. Mr. Ingraham stated:

> While the ground floor is not currently being utilized, except by the museum staff for bathroom facilities, the space is not currently, nor will it be used by the resort. The Zlotoff Foundation, which funds the Museum, is leasing the entire barn structure from the resort and as director I am requesting that the wording of the ZB[A]'s Conditions (November 30th) and the PC's Findings (December 7th) be changed to reflect the same.
>
> As reflected in the Conditions outlined in the ZBA's Decision we are permitted to hold up to 6 "Special Events" per year for which we may use utilize the ground floor.

Town's Statement of Disputed Material Facts, Exhibit 6.

Mr. Ingraham wrote to the ZA once more to follow up, stating:

"The owner just wanted to make sure the Zlotoff Foundation was recognized as leasing the entire barn structure for the museum and not just the upper floor. As I mentioned it would be a great space to hold special events like demonstrations without endangering the exhibits on the upper floor."

Town's Statement of Disputed Material Facts, Exhibit 7.

In response, the ZBA and the PC issued corrected decisions. The corrected ZBA decision includes the following finding: "The lower level of the [Museum building] is currently empty and is used by the museum. There is a rest room on the lower level for employee use only; a public

14

rest room is in the Resort Office." Foundation's Motion, Attachment 3, Exhibit I, at 3. The corrected decision also includes changes to reflect the use of the first floor: "The number of special events related to the Tool Museum outside of operating hours, and to include the use (as necessary) of the ground floor, shall be limited to 6 per year." Id. at 4.

While the undisputed facts clearly show that the Museum proposal included the use of the first floor for special events, the evidence does nothing to clarify whether the proposal contemplated public Museum displays on both floors, or conversely, represented that displays would be limited to the second floor only. The Town alleges that approved public use was limited to the second floor, noting that the ZBA described the proposal as "a Tool Museum located on the second floor of a 2-story barn." Id. at 1. According to the Town, the first floor was to be used only "as necessary" for special events and would otherwise be dedicated to storage. *See* id. at 4. The Town also alleges, based on the minutes of the Foundation's municipal appeal, that ZBA members who participated in the permitting decision recall "very clear" testimony "that [the Museum was not] going to use the downstairs, but they were going to use it as storage only." Foundation's Motion, Attachment 3, Exhibit U. While this is an allegation, not an undisputed fact, it is supported by evidence in the record and we therefore take it as true for purposes of deciding this summary judgment motion. *See* White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (we accept as true all of the nonmovant's allegations of fact, as long as they are supported by affidavits or other evidence).

If the proposal for public Museum use was expressly limited to the second floor, then it follows that the ZBA's review of the conditional use criteria was based on such assurances. Considering the Town's allegations, we must conclude that there is a genuine dispute as to the facts surrounding the proposal presented to the ZBA and the PC. These facts are material because in this case we must "determine the proposal presented to understand the permit requirements." *See* Kostenblatt, 161 Vt. at 299. As such, the Foundation is not entitled to judgment as a matter of law.

The Foundation raises one other piece of evidence in support of its motion: the ZA's letter to Mr. Ingraham, written in response to his request for clarification of the conditional use and stie plan approvals. The ZA stated, in relevant part:

Enclosed are the corrected Planning Commission and Zoning Board of Adjustment decisions for the Zlotoff Tool Museum reflecting that the museum has the use of both floors of the barn. ZBA Finding #9 and Planning Commission Finding #2 have been corrected, as have the ZBA's Condition allowing for the use of the entire building for special events.

Foundation's Motion, Attachment 3, Exhibit K. The Foundation argues that the letter is effectively a decision, clarifying that "the museum has the use of both floors of the [building]." *See* id.

Even if the letter could be read to provide such clarity, however, it is not part of the corrected permit decisions and was not part of the proposal presented to the ZBA or the PC.[11] Furthermore, the Foundation's briefing and its Statement of Questions show that it believes the Town should be estopped from issuing the Museum NOV in light of this allegedly countervailing guidance from the ZA.[12] *See* Foundation's Motion for Summary Judgment at 12 & n.5 (noting that the Foundation's Question 9 raises the issue of estoppel); Foundations Reply in Support of its Motion for Summary Judgment at 15–16 (citing In re Langlois/Novicki Variance Denial, 2017 VT 76, 205 Vt. 340, which decided whether a town should be estopped from enforcing a zoning violation where an applicant relied on advice from the zoning administrator). "The equitable estoppel doctrine has four elements," none of which are addressed in the Foundation's motion or associated briefing. While the Foundation has raised the issue, we cannot grant summary judgment on a bare assertion of estoppel.

Because we conclude that there is a genuine dispute of material fact, and the Foundation is not entitled to judgment as a matter of law, we must **DENY** the Foundation's motion as it relates to the Museum NOV. *See* V.R.C.P. 56(a).

### b. The Garage NOV

In 2015, the Foundation received site plan approval for its Garage at 166 Landon Road. The Garage was classified as an "Independent Structure" under the Regulations, which is a

---

[11] We reiterate that under permit Condition 2, "Applicants shall comply with all evidence as presented at the hearing or as amended by this decision."

[12] The Foundation's Question 9 asks: "Is the ZA, and therefore the Town, estopped from issuing a Notice of Violation alleging improper use of both floors of the museum barn, where the ZA issued a . . . letter that stated in pertinent part, 'the museum has the use of both floors of the barn,' and the Museum is operating in accordance with that statement?" *See* Statement of Questions.

16

permitted use upon site plan approval in the Rural Residential District. *See* Regulations Table 2.2. In the subsequent Garage NOV, the ZA concluded that "the garage is in violation of . . . General Definitions (Structure, Independent) of the South Hero Development Regulations." Under the ZA's interpretation of the Regulations, "an Independent Structure cannot be associated with any principal or *conditional* use. The garage's association with Z Motor Sports museum at Apple Island Resort violates its definition as an Independent Structure." Foundation's Motion, Attachment 1, Exhibit Q (emphasis in original). The DRB's May 29, 2019 Decision upheld the NOV after finding that "the garage now supports the commercial use of the museum building." Id. at Attachment 3, Exhibit U.

The Foundation argues that the Garage qualifies as an Independent Structure and therefore is not in violation of the existing site plan approval. As such, the Foundation seeks the dismissal of the Garage NOV.[13] The Town supports the conclusion of the ZA and the DRB: that the Garage's association with the Museum represents a change in use such that the Garage is no longer an Independent Structure. The Regulations define a "Structure, Independent" as:

> A free-standing structure, the use of which is not residential nor commercial nor associated with any principal permitted or conditional use. Examples of such a structure include, but are not limited to, a garage, a workshop, tool shed, greenhouse, or storage building which does not meet any other definitions in these regulations.

Regulations at p.59.

It is undisputed that the Garage is free-standing and is not residential; at issue is whether the use is "commercial" or "associated with a[] principal . . . conditional use." *See* id.

In interpreting zoning ordinances, we apply familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. (citations omitted). If there is no plain meaning, we will "attempt to discern the intent from other sources," including those outside the Regulations. *See* In re Stowe Club Highlands, 164 Vt. 272, 280 (1995).

---

[13] The Foundation's Question 3 in this appeal asks: "Is the Appellant's garage structure at 166 Landon Road a "Structure, Independent," pursuant to the definitions of the South Hero Development Regulations? *See* Statement of Questions. Question 5 asks: Is the Appellant's garage structure at 166 Landon Road in South Hero in conformance with its April 1, 2015 site plan approval for an independent structure?" Id. Question 6 asks: "Should the ZA's February 26, 2019 Notice of Violation as to Appellant's garage structure be dismissed?" Id.

Our "paramount goal" is to implement the intent of its drafters. Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. We therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quotations omitted). Finally, because zoning ordinances limit common law property rights, we resolve any uncertainty in favor of the property owner. In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 586.

The Town asserts that we should defer to the DRB's interpretation, as least insofar as it "construed 'commercial' to include the garage's operation as a 'support facility' for the museum." Town's Opposition to the Foundation's Motion for Summary Judgment at 28, filed Jan. 20, 2020 [hereinafter Town's Opposition]. A municipality's interpretation of its own ordinance is entitled to some measure of deference, even in the context of *de novo* review, "if it is reasonable and has been applied consistently." *See* In re Carrigan Conditional Use & Certificate of Compliance, 2014 VT 125, ¶ 10, 198 Vt. 438 (2014); In re Maple Tree Place, 156 Vt. 494, 499–500 (1991) (interpretation by a zoning board "can be determinative in a close case."); In re Korbet, 2005 VT 7, ¶ 10, 178 Vt. 459 (2005) ("[T]he weight to be accorded . . . depends on the explanation of a 'reason or rationale for its decision' and a demonstration that the interpretation has been consistent.") (quoting In re Chatelain, 164 Vt. 597, 598 (1995) (mem.)). However, in this case the DRB's findings are "conclusory; it failed to offer any reason or rationale." *See* Chatelain, 164 Vt. at 598.

The DRB found that "the garage now supports the commercial use of the museum building" and upheld the Garage NOV without explaining why the use of the museum building is "commercial," why the use of the Garage is "commercial" by association, or why the museum should be considered a "principal . . . conditional use," as those terms are used in the Regulations. *See* DRB Decision at 3–4; Regulations at p.59 (defining "Structure, Independent"). Furthermore, the Town has not demonstrated or even alleged that any aspect of the DRB's interpretation "has been consistently applied."[14] *See* Korbet, 2005 VT 7, ¶ 10; Chatelain, 164 Vt. at 596 ("[T]here is no indication of a consistent interpretation . . . to which we must give deference.") (quotation

---

[14] The Town maintains that "there is no evidence that the DRB has applied this definition inconsistently or differently in the past." By the same token, however, the Town has provided "no evidence of how the [definition] has been interpreted in other cases [before the DRB]." *See* Chatelain, 164 Vt. at 598.

omitted).  We recognize that the Foundation's use of the Garage is somewhat unique and is possibly unlike uses of similar structures in the Town.  However, we decline to defer to the DRB under these circumstances, and we now consider the interpretations advanced by the parties.

The first question is whether the Foundation's use of the Garage is "commercial."  *See* Regulations at p.59 (an Independent Structure may not be "residential, nor commercial").  The Regulations define "commercial use" as follows:

> A commercial use shall include, but not be limited to, grocery, hardware, drug, general stores, as well as car and boat sales and service, department stores, gift shops, youth or other camps, clubs, indoor recreation facilities, and any other facility for wholesale or retail sales of goods or services.

Regulations at p. 56.  The Foundation contends that the definition identifies a non-exclusive list of "enterprises that transact for a fee," reinforced by a catch-all clause for facilities engaged in "wholesale or retail sales of goods or services."  *See* id.  We agree.  *See* Langle v. Kurkul, 146 Vt. 513, 515 (1986) ("[W]hen an enumerated list in a statute . . . is followed by a general term, the general term must be construed to include only those terms which are similar in nature to the enumerated terms.").  The language of the statute advances a common-sense concept of commerce, where money is exchanged for goods or services.

The Foundation uses the Garage as an "essential storage and repair location" for the car collection displayed at the Museum.  The Garage also provides meeting space for the Museum, but it is not generally open to the public[15] and there has been no suggestion that it sells goods or services for profit or otherwise.  As such, the Foundation argues that the Garage is not used for a commercial purpose as defined by the Regulations.  The Town does not directly challenge this interpretation; it asserts that the Garage meets the definition of "commercial use" because it is used as a support facility for the Museum.  Though the Museum does not charge admission, the Town argues that it is a commercial use because it attracts guests to the Apple Island Resort – a for-profit enterprise which is more readily classified as commercial.

---

[15] The Town, in its Statement of Disputed Facts, suggests that it does not understand what is meant by the Foundation's statement that "[t]he public is not generally invited to the garage."  We use a similar phrase here only to indicate our understanding that the Garage is not a place that might be thought of as a public facility or a vendor of goods or services.

In short, the Town's argument appears to be that the Garage is commercial because it is associated with the Museum, which in turn attracts customers to the Resort. We reject the Town's interpretation for two reasons. First, the language of the definition does not contemplate that an otherwise non-commercial use can become commercial by association. *See* Regulations at p.56. The definition speaks to specific types of uses, not association with those uses. *See* id. Second, to the extent that the definition is ambiguous, we find the Town's interpretation untenable. Even assuming that association or involvement with a commercial use could render a separate use on separate property "commercial", neither the Town nor the Regulations offer any guidance on what type of association is required. Furthermore, the Town appears to argue that an indirect link to transactions for goods or services will suffice.

The Town implicitly accepts that the use of the Garage does not fit the definition of commercial use, unless viewed in connection with the Museum. But the Town does not argue that the Museum itself fits the definition. Instead, under the Town's interpretation, the Museum is commercial because it draws visitors to the Resort. This two-or three-step chain of association finds no support in the Regulations, and it would seem to allow for almost any use to be classified as commercial. *See* Regulations p.56; Ran-Mar, Inc. v. Town of Berlin, 2006 VT 117, ¶ 5, 181 Vt. 26 (consider "effects and consequences" when determining Legislative intent); In re Southview Assocs., 153 Vt. 171, 175 (1989) ("We will avoid a construction that would render the legislation ineffective or irrational.").

We return to the plain meaning of the definition, that a commercial use involves the sale of goods or services of some kind. *See* Regulations p.56; In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262 (we "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance"); Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61. (instructing us to "apply common sense"). The Garage is used for storage, maintenance, shipping, and general support for the car collection, as well as meeting space for the Museum. Considering these uses, we conclude that the Garage is not commercial within the meaning of the Regulations. *See* Regulations at pp.56, 59; *see also* In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 586 (we resolve any uncertainty in favor of the property owner).

The next question is whether the Garage is "associated with a[] principal . . . conditional use." *See* Regulations at p.59 (defining "Structure, Independent"). According to the Town, the Garage's association with the Museum means that the Garage is no longer independent. While the parties agree that the Museum is a conditional use, the Foundation argues that the Museum is not a "principal use" and that the Garage is not "associated" with the Museum. Id. If the Museum is not a principal use, we need not reach the issue of association. Thus, we begin with the meaning of "principal . . . use." Id.

The Regulations do not provide a definition for this term. The Town argues that "'[p]rincipal' means 'primary' . . . [t]herefore the plain language of the regulation states that an independent structure may not be associated with any more important or 'primary' conditional use." Town's Opposition at 25; *see also* Black's Law Dictionary (11th ed. 2019). Because the Garage supports the Museum in various ways, the Town contends that the Museum is the primary or principal use between the two, and thus Garage is not an Independent Structure. There is no question that "[o]rdinarily, we rely on the plain meaning of the language . . . because we presume that the [legislative body] states what it intends." Massachusetts Mun. Wholesale Elec. Co. v. State, 161 Vt. 346, 355 (1994). However, "where such a presumption is doubtful, the plain meaning of the words will not necessarily control, for, ultimately, it is the legislative intent which constitutes the law." Id. (quotations omitted).

The Foundation argues that the Town overlooks the way that the term "principal use" is used in Vermont zoning law, and it asserts that the term is widely accepted as referring to a use on the same lot. As the Garage and the Museum are on separate properties, the Foundation maintains that the Museum cannot be considered a "principal use" in this context. "When the [legislation] uses legal terms of art, we presume that the [legislative body] intended the terms to have their well-established legal meanings." CitiFinancial, Inc. v. Balch, 2013 VT 86, ¶ 38, 195 Vt. 21 (2013); *see also* Black's Law Dictionary (11th ed. 2019) (defining "term of art" as "[a] word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts").

We agree that "principal use" has an established, if at times implicit, meaning in Vermont zoning law, and in zoning law at large. A survey of Vermont cases, including references to the

zoning bylaws of various municipalities, confirms that "principal use" typically means a primary use (as opposed to an accessory or subordinate use) of the project, structure, or property under review, whether that review concerns a lot, parcel, building, facility, or similar. *See, e.g.*, In re Application of White, 155 Vt. 612, 620 (1990) (noting that Randolph zoning regulations defined "a principal use as one which is dominant on a lot such use or uses being fundamental and superior to any other use of the land or lot") (quotation omitted); In re B & M Realty, LLC, 2016 VT 114, ¶ 40, 203 Vt. 438 (2016) ("[A] principal retail establishment is an establishment where retail is the primary occupant of space in a building, as distinguished from an ancillary use."); In re Murphy Conditional Use Application, Nos. 134-6-06 Vtec and 168-7-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Nov. 16, 2006) (Wright, J.) (Bakersfield zoning bylaws defined "principal structure/use" as "a structure, or use, directly involved with the primary purpose of ownership of a particular lot") (quotation omitted); In re Appeal of Martin, Nos. 249-11-02 Vtec and 21-2-03 Vtec, slip op. at 3 (Vt. Envtl. Ct. Aug. 11, 2003) (Wright, J.) ("[T]here was no principal use or building on the parcel for this proposed building to be accessory to; that is, the proposed garage and storage building was the principal use being proposed for the parcel . . . ."). The general understanding in Vermont appears consistent with zoning law in other jurisdictions. *See, e.g.*, 4 P. Salkin, American Law of Zoning, § 41:16 (5th ed. 2020) (citing regulations from Connecticut to define "[p]rincipal use" as "the primary or predominant use of any lot").

We also agree with the Foundation that the interpretation offered by the Town would render the "Independent Structure" classification all but meaningless. The Regulations provide a nonexclusive list of structures which may qualify as independent: "a garage, workshop, tool shed, greenhouse, or storage building which does not meet any other definitions in these regulations." Regulations at p.59–60. If, as the Town contends, these structures cannot be associated with any primary permitted or conditional use on any property, it is hard to imagine a garage, workshop, or storage facility that could qualify. *See* id.; *see also* Ran-Mar, Inc. v. Town of Berlin, 2006 VT 117, ¶ 5, 181 Vt. 26 (consider "effects and consequences" when determining Legislative intent); In re Southview Assocs., 153 Vt. 171, 175 (1989) ("We will avoid a construction that would render the legislation ineffective or irrational."). It makes far more sense that an independent structure is "independent" precisely because it is not an accessory structure, which

22

the Regulations define as "subordinate to the principal use or structure and located on the same lot." *See* Regulations at p.59; *see also* <u>In re Laberge Moto-Cross Track</u>, 2011 VT 1, ¶ 8, 189 Vt. 578 (the Court will "apply common sense" in statutory construction).

Considering the prevailing understanding of "principal use" in Vermont, and without further guidance from the Regulations, we decline to adopt the Town's construction. We conclude that "principal use," in this context, means a primary use (as opposed to an accessory or subordinate use) of the structure or property under review. *See, e.g.*, <u>In re Appeal of Martin</u>, Nos. 249-11-02 Vtec and 21-2-03 Vtec at 3 (Aug. 11, 2003) ("[T]here was no principal use or building on the parcel for this proposed building to be accessory to; that is, the proposed garage and storage building was the principal use being proposed for the parcel . . . ."); *see also* <u>Bjerke</u>, 2014 VT 13, ¶ 22 ("[B]ecause zoning ordinances limit common law property rights, we resolve any uncertainty in favor of the property owner."). As the Garage is not associated with any "permitted or conditional use" on the subject property at 166 Landon Road, and we have already concluded that the use of the Garage is not "commercial," we further conclude that the Garage meets the definition of an independent structure. *See* Regulations at 59–60 (independent structures may not be "commercial nor associated with any principal permitted or conditional use").

The Foundation has demonstrated that the Garage qualifies as an Independent Structure and is not in violation of the existing site plan approval or certificate of occupancy. The Foundation is entitled to judgment as a matter of law, and we therefore **GRANT** its motion for summary judgment as to the Garage NOV. See V.R.C.P. 56(a). We answer the Foundation's Questions 3, 5, and 6 in the affirmative, and hereby **DISMISS** the Garage NOV.

III.    <u>The Town's Cross-Motion for Summary Judgment</u>

The Town's cross-motion involves the same issues that arose in connection with the Foundation's motion. The Town asks us to dismiss the Foundation's appeal because (1) the Foundation lacks standing to pursue its appeal of the Museum NOV, and (2) both NOVs are valid: the Foundation's activities have exceeded the scope of existing approvals. We have already concluded that the Foundation has statutory standing, and we have denied the Town's cross-motion on that issue. We have also granted summary judgment to the Foundation with respect

23

to the Garage, dismissing the Garage NOV. The Town's cross-motion is therefore **MOOT** as to the Garage NOV. The remaining issue is whether the Foundation's use of the Museum building has exceeded the scope of its permits such that the Museum NOV is valid.

The parties' legal arguments regarding the Museum NOV are much the same as those previously addressed in our discussion of the Foundation's motion above.[16] For the reasons outlined on pages 12–14, we conclude that Condition 2 of the conditional use permit requires us to "determine the proposal presented [to the ZBA] to understand the permit requirements."[17] *See* Kostenblatt, 161 Vt. at 299. To that end, we examine the undisputed facts and the allegations of the parties, giving the Foundation the benefit of all reasonable doubts and inferences. *See* City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

The evidence available to us at this stage is limited and subject to conflicting interpretations. The Town again notes that the ZBA described the proposal as "a Tool Museum located on the second floor of a 2-story barn." Foundation's Motion, Attachment 3, Exhibit I, at 1. Yet, because there is no condition expressly limiting the Museum to the second floor, we must ascertain whether the information presented to the ZBA contained any such restriction. *See* id. at 4; Kostenblatt, 161 Vt. at 299 (while unstated conditions "may not be imposed on the permittee," zoning decisions may impose conditions which require a project to be carried out "pursuant to the plans [and] specifications admitted into evidence"). The Town also reiterates its allegation that ZBA members received assurances during the conditional use hearing that the first floor would not be part of the Museum, but rather used for storage only. *See* Foundation's Motion, Attachment 3, Exhibit U.

In response, the Foundation alleges that Mr. Ingraham requested clarification of the written decisions specifically to correct a misunderstanding on the part of the ZBA and the PC

---

[16] We take this opportunity to address one remaining aspect of the Town's argument. The Town appears to suggest that the Foundation has changed its use of the Museum building by opening a public display of the car collection on the first floor. However, the Museum NOV alleges that the use of the first floor "constitutes an enlargement of the original conditional use," not a change in use. Foundation's Motion, Attachment 3, Exhibit R (emphasis added). As we have said, we must decide whether the existing approvals allow the Foundation to operate a public museum on both floors of the Museum building.

[17] Once again, permit Condition 2 requires the Foundation to "comply with all evidence as presented at the hearing or as amended by this [permit]."

about the use of the first floor.  *See* Town's Exhibits 6, 7 (attached to the Town's Statement of Disputed Facts).  According to the Foundation, the misunderstanding was rectified – as evidenced by changes incorporated into the corrected decisions.  The ZBA's corrected decision deleted references to storage and removed language expressly restricting public access to the first floor.  *See* Foundation's Exhibit B (attached to Foundation's Statement of Disputed Material Facts).

Given the conflicting evidence before us, and giving the Foundation the benefit of reasonable doubt, we conclude that there is a genuine dispute of material fact.  In this situation, "the usual and proper course is . . . to deny [summary judgment] and permit the case to proceed to trial, where the trier of fact may weigh all of the evidence, assess the credibility of witnesses, and ultimately resolve the factual dispute."  *See* In re Estate of Holbrook, 2017 VT 15, ¶ 13, 204 Vt. 276 (2017) (citation omitted).  This case will no doubt benefit from further factual development and, if trial is appropriate, the testimony of witnesses.  The disputed facts prevent us from determining the true scope of the Museum's permits and preclude judgment for the Town as a matter of law.  For these reasons, the Towns motion for summary judgment is **DENIED** as to the Museum NOV.[18]

### Conclusion

For the reasons set forth above, we conclude that the Foundation has statutory standing under 24 V.S.A. § 4465(b)(3) to maintain its appeal of the Museum NOV.  We further conclude that there is a genuine dispute of material fact as to the Museum's compliance with existing permit requirements, which precludes summary judgment for either party with respect to the Museum NOV.  Finally, we conclude that the Foundation's Garage qualifies as an Independent Structure under the Regulations.

The Foundation's Motion for Summary Judgment is **DENIED** as to the Museum NOV, and **GRANTED** as to the Garage NOV.  The Garage NOV is **DISMISSED**.  The Town's Cross-Motion for

---

[18] We also note that a resolution on the scope of the Museum approvals would not allow us to dismiss the appeal of the Museum NOV as requested by the Town.  The Foundation's Question 9 asks whether the Town should be estopped from issuing the Museum NOV, because "the ZA issued a . . . letter that stated in pertinent part, 'the museum has the use of both floors of the [building].'"  *See* Statement of Questions.  The Foundation briefly raised this issue in connection with its motion for summary judgment, but neither party offered an argument on the subject.  Therefore, even if we concluded that the Museum NOV properly described a permit violation, we could not dismiss the Foundation's appeal of the NOV.

Summary Judgment is **DENIED** as to the Foundation's standing, **DENIED** as to the Museum NOV, and **MOOT** as to the Garage NOV.

The Foundation's Questions 1, 3, 5, 6, and 7 are answered in the affirmative. Question 8 is answered in the negative. Because we have dismissed the Garage NOV, Questions 2 and 4 are **MOOT**. The legal issues remaining before the Court are contained in Questions 9–15.

Dated at Newfane, Vermont, this 24th day of September 2020.

Thomas S. Durkin, Superior Judge
Environmental Division